FILED
2017 Jan-24  PM 05:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CATLIN SYNDICATE LIMITED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.** |
| | ) | **4:16-CV-01331** |
| **RAMUJI, LLC, d/b/a BUDGET INN,** | ) | |
| **and PEOPLES INDEPENDENT** | ) | |
| **BANK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## RAMUJI, LLC'S AMENDED THIRD-PARTY COMPLAINT

Ramuji, LLC ("Ramuji"), by and through its undersigned counsel of record, hereby amends its Third-Party Complaint to add the following necessary parties pursuant to Fed. R. Civ. P. 14, 15, and/or 19 and make third-party claims against them:

1.     By adding Ascot Syndicate (1414) ("Ascot"); ANV Jubilee Syndicate (5820) ("ANV Jubilee"); S.A. Meacock & Company Syndicate (727) ("S.A. Meacock"); and ANV (1861) ("ANV") as a third-party defendant. [1]

---

[1] Ramuji understands that all 4 of these Syndicates and Catlin can be referred to collectively as "Certain Underwriters at Lloyd's London Subscribing to Policy ULL20018."

## PARTIES

2.      Third-party defendant Randy Jones & Associates, Inc. ("Jones") is a domestic corporation organized under the laws of the State of Alabama.  Jones is a retail insurance broker and is principally located in, and directs its business to, Albertville, Marshall County, Alabama.

3.      Third-party defendant Jon Pair ("Pair") is, upon information and belief, an adult resident citizen of Marshall County, Alabama.  Pair, upon information and belief, is an insurance agent/broker and employed by Jones.

4.      Ascot, ANV Jubilee, S.A. Meacock, ANV, and Plaintiff Catlin Syndicate Limited ("Catlin") are all syndicates that transact business in the marketplace known as Lloyd's of London.  Upon present information and belief, the aforementioned entities are corporations organized and existing under the laws of England, and principally located in England.  All are therefore deemed to be citizens or subjects of a foreign state pursuant to 28 U.S.C. § 1332.  Catlin, Ascot, ANV Jubilee, S.A. Meacock, and ANV underwrote and subscribed to risk on the commercial insurance policy issued to Ramuji by Lloyd's of London (the "Lloyd's Policy"), which is made the basis of this litigation.  Catlin, Ascot, ANV Jubilee, S.A. Meacock, and ANV are hereinafter sometimes collectively referred to as "Lloyd's" and/or "Underwriters."

2

5.      Ascot, ANV Jubilee, S.A. Meacock, and ANV are all necessary parties to this action.   The Lloyd's entities all underwrote and subscribed to risk on the policy made the basis of this lawsuit.   Pursuant to Rule 19 of the Federal Rules of Civil Procedure, they must be joined as parties because in their absence, this Honorable Court cannot accord complete relief among the existing parties as any judgment against Catlin would not result in full payment under the Lloyd's Policy by all of the Lloyd's entities.  *See* Fed. R. Civ. P. 19(a)(1)(A).  Such a result may impair or impede the parties' ability to protect their interests, or could leave all parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  *See* Fed. R. Civ. P. 19(a)(1)(B).

## JURISDICTION

6.      The matter in controversy between Ramuji and the third-party defendants exceeds $75,000.

7.      Under 28 U.S.C.S. § 1367(a), district courts shall have supplemental jurisdiction over both additional claims and additional parties when those claims are so related to claims in the action within the original jurisdiction of the court that they form part of the same case or controversy under U.S. Const. Art. III.

8.      If a federal court has proper jurisdiction over the main action, it may adjudicate third-party claims arising out of the main action's subject matter, regardless of whether the third-party claim has its own independent basis of

3

jurisdiction.  *See* Price v. CTB, Inc., 201 F.R.D. 547, 2001 U.S. Dist. LEXIS

10092 (M.D. Ala. 2001).

## FACTS

9.      Pair and Jones were insurance agents/brokers who had procured

insurance policies in the past to provide coverage for Ramuji.  In fact, Pair and

Jones had procured such coverage in the past with Nationwide Insurance

Company and with Certain Underwriters at Lloyd's of London, and through

Lloyd's doing business by or through Plaintiff Catlin Syndicate Limited and/or

RPS Continental Special Risks.  Pair and Jones procured the policy in question

which Underwriters at Lloyd's are attempting to avoid.  On information and belief

the policy in question was preceded by a policy also procured by Pair and Jones

which also was issued by Lloyd's (hereinafter the "policy being replaced").  On

information and belief, the policy being replaced was preceded by a policy issued

by Nationwide and which had been procured by Pair and Jones.

10.     Pair and Jones had extensive knowledge concerning the status of

Ramuji's past and existing insurance coverages, Ramuji's claims history,

Ramuji's history of a franchisor-franchisee dispute which led to judgments or

liens, and the insurance needs of Ramuji.  Pair and Jones also knew that English

was a second language of the principal owner and operator of Ramuji.  They

knew, therefore, that his ability to understand and speak English, as well as his

4

ability to read and understand written English, was limited.  They understood, therefore, that he was limited and/or disabled in his ability to discern and understand the contents of documents, particularly in the context of documents related to the insurance industry.  Pair and Jones knew that he was not fully capable of reading and understanding all the terms of the documents involved in this insurance transaction, and that he was relying upon them in that regard.  Pair and Jones not only understood these limitations, but also knew they had a special relationship of trust with him because of the longevity and frequency of their business relationship with Ramuji.

11.     Additionally, Pair and Jones had many years of experience in insurance application processes.  They knew Ramuji had existing coverage through the policy being replaced.  They knew the applications used by different insurance companies varied in terms of the questions asked, the manner or scope of the questions asked, and the information sought.  They knew insurance coverage for Ramuji, which would replace its existing coverage and/or take over where the existing coverage left off, was extremely important to Ramuji.  They knew that facts and circumstances which concerned and were unique to Ramuji could have different effects upon coverage depending upon which application was used, how each question was answered, and the information provided on the

application Pair and Jones chose to use.  In other words, Pair and Jones were experts in the procurement of insurance and insurance application processes.

12.     The knowledge and experience of Pair and Jones regarding procurement of insurance, differences between insurance applications, and insurance application processes was not known to and cannot be imputed to Ramuji.  Therefore, Ramuji was entitled to rely upon Pair and Jones in the process of procuring insurance coverage for Ramuji.  In fact, Ramuji did at all relevant times so rely upon Pair and Jones.

13.     Ramuji had two claims under the policy being replaced.  One claim related to some water damage.  One claim resulted from property damage caused by a suicide in one of the hotel's rooms.  Pair and Jones and Lloyd's were completely aware of these claims.

14.     Ramuji also had a franchisee-franchisor dispute several years ago which resulted in lawsuits, judgments, and/or judgment liens against Ramuji.  Although the judgments were remote in time, one or more judgments liens may have been filed or renewed closer to the relevant time frames.  Pair and Jones were completely aware of these facts.  Additionally and/or alternatively, Pair and Jones knew enough of these facts to have sufficient indications that would put a prudent person on notice so as to induce an inquiry which would have revealed the truth of these facts.

6

15.     In his professional capacity, Pair had been to Ramuji's hotel premises before the policy in question was applied for and/or issued.  Therefore, Pair and Jones knew the premises generally and knew renovations to the hotel had been performed and/or were in progress.  Pair and Jones knew the hotel had Suites and that certain half-walls had been removed.

16.     Ramuji received a letter from Underwriters and/or Lloyd's informing it that they were not going to renew the policy being replaced. Ramuji gave this letter to Pair, who thereafter informed Ramuji that Pair and Jones would obtain an appropriate policy of insurance to replace the policy which was not being renewed by Underwriters.  Pair told Ramuji that Pair and Jones would obtain this new coverage from a different insurance company.  Eventually, although the amount of coverage remained the same, the amount of the premium increased.

17.     Pair and Jones proceeded to procure the insurance policy in question. Pair and Jones completed all necessary paperwork in the insurance application process required by Underwriters.  The Application asked whether Ramuji "has had a judgment or lien during the last five (5) years."  Pair and Jones answered "N," or "no," and provided it to Ramuji for signature.  However, Pair and Jones, being experienced in the insurance application processes and having greater knowledge and experience than Ramuji, failed to completely and appropriately advise,  inform,  and consult with Ramuji about the application's terms, including,

but not limited to, the judgments or liens in question.  The franchisor-franchisee dispute which led to the judgments or liens was fully disclosed to Pair and Jones.

18.     Ramuji, acting in reliance upon the expertise and advice of Pair and Jones, including their representations and experience in the procurement of insurance contracts, signed the application.   Pair and Jones submitted it and other paperwork to Underwriters.  Thereafter, Ramuji paid all policy premiums in reliance upon the fact that Pair and Jones had successfully obtained replacement insurance coverage for Ramuji and that Ramuji's hotel was insured.

19.     In or around one (1) month after issuing the policy in question, Underwriters sent an "inspector" of some sort to Ramuji's premises.  This representative of Underwriters toured and inspected the premises.  Ramuji was fully cooperative with this inspection and allowed Underwriters' inspector complete access to the premises per any request he made.  Neither Pair nor Jones asked for, recommended, or demanded any changes or upgrades to the premises. Thereafter, on information and belief, Pair, Jones, and Underwriters continued to receive, divide, and financially benefit from the premium payments of Ramuji. None of them ever indicated there was any reason or basis to cancel the policy in question prior to the fire in question.

20.     At all pertinent times, Pair and/or Jones acted as the agent of Ramuji in procuring the policy in question.

8

21.     Additionally, and/or alternatively, at all pertinent times, Pair and/or Jones acted as the agent of Underwriters in procuring the policy in question.

22.     At all pertinent times, Pair and/or Jones had the apparent authority to act as the agent of Underwriters in procuring the policy in question.

23.     All of the knowledge of Pair and/or Jones during the time frames relevant to procurement of the policy in question was known to or should be imputed to Underwriters.

24.     Pair and Jones gathered information and worked for the benefit of Underwriters.

25.     Ramuji understood Pair and Jones to represent they would find coverage with a company different than Underwriters, and did not understand they were actually placing the same amount of coverage for a higher premium with Underwriters.

26.     Pair and Jones were paid more money for the policy in question than for the policy being replaced.

27.     Underwriters were paid more money for the policy in question than for the policy being replaced.

28.     The facts which Underwriters claim were misrepresented to them and are using as the basis for avoiding coverage under the policy in question are actually true and are not fraudulent.  Alternatively and/or additionally, any such

9

alleged misrepresentations are not material to the obligations of Underwriters arising out of the policy in question.  Alternatively and/or additionally, any such alleged misrepresentations would not in good faith have actually caused Underwriters to refuse to issue the policy, refuse to issue the policy at that premium, refuse to issue the amount of coverage in question, and/or refuse to issue coverage for the hazard in question; and even if Underwriters had known the "truth" about what they now claim were misrepresentations, Underwriters would have issued the policy in question.

29.     Underwriters, Pair, and Jones know that Underwriters are not allowed to automatically avoid coverage simply because some employee of Underwriters says that Underwriters would not have undertaken the risk had they known the truth as to these particular facts.  They know, if that were the law, then insurance companies would be sorely tempted to deny and defend almost every claim.

30.     To avoid a policy for misrepresentation, Underwriters must have requested the information.  The application in this case was not clear in terms of the information it sought.  This application for coverage should be construed more strongly against Underwriters than against Ramuji.

31.     Pair and Jones, to the extent they acted as agents of Ramuji in procuring the policy in question, owed Ramuji a duty to exercise reasonable skill, care, and diligence in effecting insurance coverage.

32.     Pair and Jones, at all times relevant times, were expected to possess, and in fact should have possessed, reasonable knowledge of the types of applications and policies, their different terms, and the coverage available in the area where Ramuji sought to be protected.

33.     Ascot, ANV Jubilee, S.A. Meacock, and ANV are identified on the Lloyd's Policy as Underwriters which underwrote the following percentages of risk on the Policy: Ascot Syndicate (25%); ANV Jubilee (10%); S.A. Meacock (10%); and ANV (10%).  As noted in Plaintiff's Complaint, Plaintiff Catlin Underwrote and assumed 45% of the risk on the Lloyd's Policy. (DOC. 1 ¶ 1) Upon information and belief, each of the foregoing Underwriters identified on the Lloyd's Policy is a foreign syndicate which transacts business in the marketplace known as Lloyd's of London.  Each Underwriter is an entity or individual which is a citizen of England and which has a registered office in England.  By underwriting a percentage of the risk on the Lloyd's Policy, each Underwriter is subject to the personal jurisdiction of this Court.

34.     Ramuji, at the time of the April 2, 2016 fire, was insured under a policy or policies of insurance with Lloyd's.

11

35.     According to the terms of the Lloyd's Policy, Ramuji had available certain coverage in total insurance limits of $2,097,136.00.  This amount includes $1,732,136 in building coverage for Ramuji's hotel located at 12960 Highway 431 South, Boaz, Alabama, $150,000.00 in business personal property coverage, $200,000.00 in business income with extra expense coverage, and $15,000.00 in coverage for an outdoor sign.

36.     The claims against Lloyd's herein are a direct and proximate result of Lloyd's failure to pay insurance benefits for a covered loss and resulting damages arising out of a fire which occurred on April 2, 2016.   Ramuji had no involvement in the fire, which was later determined, on information and belief, to have been set by a hotel guest, who has been arrested and charged with arson.

## COUNT ONE - NEGLIGENCE

37.     Ramuji adopts the foregoing factual allegations and the factual allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) by reference and incorporates them herein as if set forth fully.

38.     Pair and Jones were insurance brokers and the agents of Ramuji in negotiating and procuring the insurance policy in question.

39.     Insurance brokers are agents of the insured, and owe the insured a duty to exercise reasonable skill, care, and diligence in effecting insurance.  An

insurance broker is expected to possess reasonable knowledge of the types of policies and their different terms.

40.     Pair and Jones failed to exercise reasonable care in advising Ramuji to cancel and/or allow its existing coverage to lapse and/or in negotiating and procuring the insurance policy in question.  Such failure includes, but is not limited to:

    a.   The failure to inquire and discuss with Ramuji the material terms of the insurance application; and/or

    b.   The failure to inform Ramuji of the material terms of the insurance application; and/or

    c.   The failure to ensure the insurance application was properly filled out; and/or

    d.   The failure to use their knowledge of facts material to coverage issues; and/or

    e.   Acts of commission and omission which may have affected insurability issues.

41.     As a direct and proximate result of Pair and Jones' negligent actions and/or omissions, Ramuji was caused harm in that Underwriters has denied coverage under the policy to Ramuji after a hotel fire, which was a covered event under the policy.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC alleges negligence against Jon Pair and Randy Jones & Associates, Inc.  Ramuji, LLC alleges damages as the result of said negligence, including all compensatory and consequential damages, interest and costs as provided by law and as the Court or jury deems just and proper.

## COUNT TWO - WANTONNESS

42.     Ramuji adopts the foregoing factual allegations and the factual allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) by reference and incorporates them herein as if set forth fully.

43.     Pair and Jones were insurance brokers and the agents of Ramuji in negotiating and procuring the insurance policy in question.

44.     Insurance brokers are agents of the insured, and owe the insured a duty to exercise reasonable skill, care, and diligence in effecting insurance.  An insurance broker is expected to possess reasonable knowledge of the types of policies and their different terms.

45.     Pair and Jones wantonly and/or recklessly failed to exercise reasonable care in advising Ramuji to cancel and/or allow its existing coverage to lapse, and/or in negotiating and procuring the insurance policy in question.  Such failure includes, but is not limited to:

14

a. The failure to inquire into the material terms of the insurance application; and/or

b. The failure to inform Ramuji of the material terms of the insurance application; and/or

c. The failure to ensure the insurance application was properly filled out; and/or

d. The failure to use their knowledge of facts material to coverage issues; and/or

e. Acts of commission and omission which may have affected insurability issues.

46.     As a direct and proximate result of Pair and Jones' wanton and reckless actions and/or omissions, Ramuji was caused harm in that Underwriters has denied coverage under the policy to Ramuji after a hotel fire, which was a covered event under the policy.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC alleges wantonness against Jon Pair and Randy Jones & Associates, Inc.  Ramuji, LLC alleges damages as the result of said wantonness, including punitive, consequential and compensatory damages, interest, and costs as provided by law and as the Court or jury deems just and proper.

## COUNT THREE – BREACH OF CONTRACT

### (Pair and Jones)

47.     Ramuji adopts the foregoing factual allegations and the factual

allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) by

reference and incorporates them herein as if set forth fully.

48.     Ramuji and Pair and/or Jones had a contract whereby Pair and Jones

were to procure a contract of insurance for Ramuji which would cover losses such

as the one arising out of the April 2, 2016 fire loss in consideration for

compensation, whether commission or otherwise.

49.     Pair and/or Jones were compensated for procuring the insurance

policy herein for Ramuji.  However, due to Pair and/or Jones' actions and/or

omissions, Underwriters has refused to pay for covered losses.

50.     Pair and/or Jones have breached their contract with Ramuji.

51.     As a direct and proximate result of said breach, Ramuji has been

caused to suffer damages.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC alleges breach

of contract against Jon Pair and Randy Jones & Associates, Inc.  Ramuji, LLC

alleges damages as the result of said breach of contract, including compensatory

and/or consequential damages as provided by law and as the Court or jury deems

just and proper, and to include prejudgment and post-judgment interest and costs as allowed by law.

## COUNT FOUR – FRAUD/MISREPRESENTATION

52.     Ramuji adopts the foregoing factual allegations and the factual allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) by reference and incorporates them herein as if set forth fully.

53.     This count of the third-party complaint is brought pursuant to Sections 100 through 104 of the Alabama Code and Alabama common law. Ramuji claims fraud, fraudulent misrepresentation, suppression, deceit, and/or reckless indifference.

54.     Ramuji alleges that Pair and Jones made misrepresentations or failed to disclose material facts when under a duty to do so concerning Ramuji's insurance application submitted to Underwriters.  Specifically, Ramuji alleges Pair and/or Jones misrepresented the particular language of the insurance application and/or that Pair and/or Jones failed to disclose the material terms of the application requiring the disclosure of judgments.   Further, Pair and/or Jones represented they would use their knowledge of all facts acquired during their relationship with Ramuji and procure coverage knowing all such facts.

55.     The above stated fraudulent misrepresentations and fraudulent omissions were made with knowledge, or with reckless disregard for the truth,

17

and/or were made negligently, recklessly, wantonly, intentionally, maliciously, and/or with an intent to deceive Ramuji and/or induce it to act or refrain from acting.

56.    Ramuji reasonably relied upon the promises and representations conveyed to it by Pair and/or Jones to its detriment.  Ramuji was caused to obtain an insurance policy and pay insurance premiums which it never would have, but for the representations conveyed, and omissions concealed, by said third-party defendants.  Ramuji has now suffered an otherwise covered loss, but has been denied coverage due to Pair and/or Randy Jones's actions and/or omissions.

57.    These representations were made to Ramuji's owner and were made as an inducement for Ramuji to do business with them in the procurement of the insurance policy in question issued by Underwriters.

58.    As a direct and proximate result of Pair and/or Jones' misrepresentations and suppression of information, Ramuji has been damaged.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC alleges fraud, misrepresentation, suppression, deceit, and/or reckless indifference against Jon Pair and Randy Jones & Associates, Inc.  Ramuji, LLC alleges damages as the result of said conduct, including punitive, consequential and compensatory damages, interest, and costs as provided by law and as the Court or jury deems just and proper.

## COUNT FIVE – CONSPIRACY TO COMMIT

## FRAUD/MISREPRESENTATION

59.     Ramuji adopts the foregoing factual allegations and the factual

allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) by

reference and incorporates them herein as if set forth fully.

60.     Pair and/or Jones and/or Underwriters engaged in a conspiracy to

commit fraud, fraudulent misrepresentations, suppression, deceit, and/or reckless

indifference.

61.     Underwriters' non-renewal letter set up the situation for Ramuji to

turn to Pair and/or Jones for assistance.  Pair and/or Jones then continued the

conspiracy by representing they would procure replacement insurance from a

different company.  However, Pair, Jones, and/or Underwriters then used the

situation they had conspired to create so they actually procured and/or provided

coverage to Ramuji in the same amount for an increased premium.  While doing

so, and in furtherance of this conspiracy, Pair and/or Jones provided information

in the Application which Underwriters would use at a later time to deny coverage

in the event a claim became necessary.

62.     Pair, Jones and/or Underwriters benefited from this conspiracy in that

they received, used, and financially benefited from Ramuji's higher premiums yet

they actually never ran any risk because they set up the basis for denying coverage by answering the Application questions in the manner they chose.

63.    Ramuji was harmed by this conspiracy because it paid premiums, and believed and relied upon the representation that it had coverage for losses like the fire loss in question.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC, alleges conspiracy to commit fraud, fraudulent misrepresentation, suppression, deceit, and/or reckless indifference against Jon Pair and Randy Jones & Associates, Inc. Ramuji, LLC alleges damages as the result of said conduct, including punitive, consequential, and compensatory damages, interest, and costs as provided by law and as the Court or jury deems just and proper.

## COUNT SIX – BREACH OF CONTRACT

64.    Ramuji adopts (a) the foregoing factual allegations and (b) the factual allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) and (c) the factual allegations in its previously filed Counterclaim (DOC. 9 ¶¶ 54-67) by reference and incorporates them herein as if set forth fully.

65.    Ramuji alleges that Lloyd's breached the terms of its insurance contract.  Lloyd's has refused to pay for covered items or replacement cost items. Lloyd's has failed to properly investigate and evaluate the claim, and otherwise failed to abide by the terms of the contract.  Lloyd's has manufactured an

allegation that the insured concealed or misrepresented facts, when it did nothing of the sort, and, even if any errors were present in the insurance application, they do not constitute material misrepresentations for which Lloyd's may deny coverage and refuse to pay insurance benefits.   Further, the insurance application was prepared by an insurance agent and agency which had full knowledge of all facts material.

66.     At the time of the losses, Lloyd's was obligated to pay according to the contract terms.  All conditions precedent to the payment of the insured's losses have been met.   The policy was in full force and effect and the premiums were paid and received.   Lloyd's has breached its contract of insurance with Ramuji.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC demands judgment against Lloyd's for breach of contract and for all compensatory or consequential damages provided by law, including prejudgment and post judgment interest, costs and for such other and further relief as to the Court and jury deems proper and just.

## COUNT SEVEN – BAD FAITH

67.     Ramuji adopts (a) the foregoing factual allegations and (b) the factual allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) and (c) the factual allegations in its previously filed Counterclaim (DOC. 9 ¶¶  54-67) by reference and incorporates them herein as if set forth fully.

21

68.     Ramuji alleges that Lloyd's has committed various acts of bad faith and specifically that Lloyd's has intentionally refused to pay and delayed payments, and manufactured reasons not to pay.  Ramuji alleges that Lloyd's has intentionally refused to pay according to the written contract of insurance with full knowledge that same was in full force and effect at the time of the loss.

69.     Since the date of the loss, Ramuji alleges that Lloyd's has investigated the loss with a pre-determined motive, has intentionally breached its duty to properly evaluate and honor legitimate claims, has not dealt fairly and in good faith, has locked the owner out of the insured premises, has orchestrated partial investigations, spoliated the insured fire scene, has committed bad faith, and committed intentional, unlawful conduct against Ramuji, including but not limited to, the following:

a.  intentionally and in bad faith refusing to abide by the policy of insurance requiring the legitimate investigation of damages and payments for the covered loss;

b.  intentionally hiring adjusters, investigators, and individuals pre-determined to side with Lloyd's in the investigation of the loss;

c.  intentionally refusing, after being presented with the evidence of the true extent of the damage, to pay for covered losses;

d.  intentionally hiring individuals to assess the losses in such a way as to get out of paying for specific items of damages;

e.  intentionally breaching the duty to properly evaluate and honor valid claims under the policy of insurance;

f.  intentionally and in bad faith communicating with its agents, adjusters, and associates in an effort to breach the contract of insurance with Ramuji;

g.  intentionally and in bad faith failing to timely pay losses under the policies, thereby creating additional damages for Ramuji;

h.  intentionally manufacturing reasons to deny the claim, including creating a manufactured position that Ramuji misrepresented facts in its application for insurance when no such misrepresentations occurred;

i.  intentionally manufacturing reasons to deny the claim, including creating a manufactured position that Ramuji violated certain building codes and statutes when no such violations occurred, and/or had no bearing on the covered loss;

j.  intentionally and in bad faith attempting to manufacture a "debatable" reason to deny the insured's legitimate claims;

23

    k.   intentionally ignoring the information known to or available from the agency and/or the agent that obtained the policy, and information already known or available to Lloyd's of London.

    l.   intentionally spoliating the insured fire scene.

70.    Ramuji alleges that Lloyd's has no lawful basis or debatable reason for its multiple refusals to pay according to the insurance contract between the parties, and said insurance company has actual knowledge of the absence of any real, debatable, or arguable basis why it should not pay the disputed monies or follow the insurance contract terms.   The actions were committed by Lloyd's with the aid and assistance of its consultants, agents, and employees.

71.    Ramuji alleges intentional and willful bad faith conduct in that Lloyd's conduct has caused Ramuji to suffer compensatory damage and Lloyd's should be punished for its conduct.

72.    Ramuji alleges that Lloyd's refusal to pay and to properly adjust and appraise the losses has been with a conscious intent to injure Ramuji and place it in an inferior bargaining position and such conduct has been with reckless disregard for the economic injuries, past, present, and future, being suffered by Ramuji.

73.    Ramuji alleges that Lloyd's has ignored and/or refused to even consider critical facts and evidence, which indicates a refusal to make a cognitive

and fair evaluation of the loss, and refusing to properly review its payment obligations under the contract of insurance, and refusing to follow its own written policy of insurance, as constructed by the said insurance company.

74.     Ramuji alleges entitlement to compensatory and punitive damages for the bad faith, unlawful, unwarranted, irresponsible, malicious, fraudulent, and intentional conduct of Lloyd's.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC alleges bad faith and improper conduct against Lloyd's.  Ramuji, LLC alleges damages as the result of said bad faith, including compensatory, consequential and punitive damages, interest, and costs as provided by law and as the Court or jury deems just and proper.

## COUNT EIGHT – RESPONDEAT SUPERIOR

75.     Ramuji adopts (a) the foregoing factual allegations and (b) the factual allegations in its previously filed third-party complaint (DOC. 15, ¶¶ 6-29) and (c) the factual allegations in its previously filed Counterclaim (DOC. 9 ¶¶ 54-67) by reference and incorporates them herein as if set forth fully.

76.     Additionally and/or alternatively, Ramuji alleges that Pair and Jones at all relevant times were acting in their capacity as agents, authorized or implied representatives, servants, and/or employees of Lloyd's such that Lloyd's should be held accountable for the conduct of Pair and/or Jones under a respondeat superior

theory of liability.  In that regard, Ramuji hereby realleges Counts One, Two, Three, and Four and specifically asserts that Lloyd's should be held accountable for the wrongful conduct of Pair and/or Jones.

WHEREFORE, PREMISES CONSIDERED, Ramuji, LLC demands judgment against Lloyd's for negligence, wantonness, breach of contract, fraud, misrepresentation, suppression, deceit, and/or reckless indifference based upon the conduct of Pair and/or Jones, and seeks an award of appropriate compensatory, consequential, and/or punitive damages, prejudgment interest, post judgment interest, and court costs as provided by law and as the Court or jury deems just and proper.

Submitted, this the 24th day of January, 2017.


/s/Gary V. Conchin
Gary V. Conchin (ASB 1263-C56G)
Attorney for Ramuji, LLC


/s/ Kenneth B. Cole, Jr.
Kenneth B. Cole, Jr. (ASB-0595-C56K)
Attorney for Ramuji, LLC


/s/ Taylor Rouse
Taylor Rouse (ASB-8709-R53M)
Attorney for Ramuji, LLC


26

**OF COUNSEL**:

CONCHIN, CLOUD & COLE, LLC
2404 Commerce Court
Huntsville, AL 35801
Telephone:  (256) 705-7777
Facsimile:  (256) 705-7778
Email:  Gary@conchincloudcole.com
Email:  Kenny@conchincloudcole.com
Email:  Taylor@conchincloudcole.com


**RAMUJI, LLC DEMANDS TRIAL BY STRUCK JURY AS TO ALL COUNTS ALLOWABLE.**


/s/Gary V. Conchin
Gary V. Conchin (ASB 1263-C56G)
Attorney for Ramuji, LLC


**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer.  Notice of this filing will be sent by operation of the Court's ECF system to counsel for all other parties as indicated on the electronic filing receipt.  Parties may access this filing through the Court's ECF system.


/s/Gary V. Conchin
Gary V. Conchin (ASB 1263-C56G)
Attorney for Ramuji, LLC

**THIRD PARTY DEFENDANTS ARE TO BE SERVED BY PROCESS
SERVER OR BY CERTIFIED MAIL AS FOLLOWS**:

Certain Underwriters at Lloyd's,
London Subscribing to Policy
ULL20018 (to include Ascot
Syndicate 1414; ANV Jubilee
Syndicate 5820; S. A. Meacock &
Company Syndicate 727; and
ANV 1861)
C/o Wilson Elser Moskowitz Edelman & Dicker, LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60663