# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| CATLIN SYNDICATE LIMITED, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAMUJI, LLC d/b/a BUDGET INN and )<br>PEOPLES INDEPENDENT BANK, )<br>)<br>Defendants. )<br>_____ )<br>)<br>RAMUJI, LLC and PEOPLE'S )<br>INDEPENDENT BANK, )<br>)<br>Counterclaim/Third-Party )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>RANDY JONES & ASSOCIATES, INC., )<br>JON PAIR, CERTAIN )<br>UNDERWRITERS AT LLOYD'S, )<br>LONDON SUBSCRIBING )<br>SEVERALLY TO POLICY NO. ULL )<br>20018, *named as* "SYNDICATE 1414 AT )<br>LLOYD'S (ASCOT UNDERWRITING )<br>LIMITED), SYNDICATE 5820 AT )<br>LLOYD'S (ANV SYNDICATES )<br>LIMITED), SYNDICATE 727 AT )<br>LLOYD'S (S.A. MEACOCH & )<br>COMPANY LIMITED), and )<br>SYNDICATE 1861 at LLOYD's (ANV )<br>SYNDICATED LIMITED), )<br>)<br>Third-Party Defendants. ) | Case No.: 4:16-CV-1331-VEH |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On August 16, 2016, Catlin Syndicated Limited ("Catlin") initiated a declaratory judgment action against Ramuji, LLC ("Ramuji") and Peoples Independent Bank ("PIB") concerning a commercial insurance policy issued to Ramuji by Catlin and four other underwriters at Lloyd's of London. (Doc. 1). On September 19, 2016, PIB answered the complaint, filed counterclaims against Catlin, and filed third-party claims against Jon Pair and Randy Jones & Associates, Inc. (Doc. 12).

On January 24, 2017, PIB filed amended counterclaims against Catlin and amended third-party claims against Jon Pair and Randy Jones & Associates, Inc. (Doc. 46, the "Amended Pleading").[1] In the same pleading, PIB also filed new third-party claims against the four other underwriters for the policy, namely Syndicate 1414 at Lloyd's (Ascot Underwriting Ltd.); Syndicate 5820 at Lloyd's (ANV Syndicates Ltd.); Syndicate 727 at Lloyd's (S.A. Meacoch & Co. Ltd.); Syndicate 1861 at Lloyd's (ANV Syndicates Ltd.) (together, the "Added Syndicates").

According to PIB, Catlin and the Added Syndicates "are all syndicates that

---

[1] PIB's amended third-party claims against Jon Pair and Randy Jones & Associates are not the subject of this memorandum opinion.

transact business in the marketplace known as Lloyd's of London," and all five

syndicates (including Catlin) "underwrote and subscribed to risk on the

commercial insurance policy issued to Ramuji by Lloyd's of London" that serves

as the basis of this litigation. (Doc. 46 at 2).

PIB argues that joinder of the Added Syndicates is proper pursuant to

Federal Rule of Civil Procedure 19(a)(1), which states as follows:

**(a)** **Persons Required to Be Joined if Feasible.**

**(1)** *Required Party.* A person who is subject to service of
process and whose joinder will not deprive the court of
subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord
complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject
of the action and is so situated that disposing of the
action in the person's absence may:

**(i)** as a practical matter impair or impede the
person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial
risk of incurring double, multiple, or
otherwise inconsistent obligations because of
the interest.

FED. R. CIV. P. 19(a)(1)(A-B). PIB alleges that this Court "cannot accord complete

relief among the existing parties as any judgment against Catlin would not result

in full payment under the Lloyd's Policy by all of the Lloyd's entities," which

would potentially impair PIB's ability to protect its interests and might leave all

parties subject to a substantial risk of multiple and inconsistent obligations. (Doc.

46 at 3).

Neither Catlin nor the Added Syndicates dispute PIB's characterization of

the positioning of the parties in this action, nor do they oppose the joinder of the

Added Syndicates as required parties pursuant to Rule 19(a)(1). The interests of

Catlin and the Added Syndicates are aligned for the purposes of the claims filed by

PIB against them, as all five syndicates underwrote and subscribed to the risk on

the policy in question. However, despite the similarity of their interests, Catlin and

the Added Syndicates separately filed Motions To Dismiss the claims brought

against them by PIB. (Docs. 53 and 63, respectively).[2]

On February 7, 2017, PIB responded to Catlin's Motion To Dismiss, and on

February 13, 2017, Catlin filed its reply. (Docs. 59, 60). On March 1, 2017, PIB

responded to the Added Syndicates' Motion To Dismiss. (Doc. 64).[3]  Both

---

[2]  While PIB refers to Catlin and the Added Syndicates together as
"Lloyd's/Underwriters/Syndicates," and Catlin refers to all five syndicates as the "Underwriters,"
the Court will refer to Catlin independently from the Added Syndicates, at least for the purposes
of addressing their separate Motions in this Order.

[3]  Though this filing is styled as a reply in the Court's CM/ECF docketing system, it is
substantively a response to the Added Syndicates' Motion To Dismiss. In that three-page
response, PIB states that "since every single fact, argument and citation used by [the Added
Syndicates] in Doc. 63 is word for word the same as those filed by Catlin in Doc. 53, PIB sees no
point in wasting this Court's time repeating the same counter-arguments, and instead hereby
presents to this Court that, for the same reasons set forth [in its response to Catlin's MTD, this]

4

Motions are ripe for this Court's disposition.

## II.    MOTION TO DISMISS STANDARD[4]

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See*
FED. R. CIV. P. 12(b)(6) ("[A] party may assert the following defenses by motion:
(6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules
of Civil Procedure require only that the complaint provide "'a short and plain
statement of the claim' that will give the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355
U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting
FED. R. CIV. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S.
544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* FED. R. CIV.
P. 8(a) (setting forth general pleading requirements for a complaint including
providing "a short and plain statement of the claim showing that the pleader is
entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule
8 does not mandate the inclusion of "detailed factual allegations" within a

---

motion to dismiss should be denied." (Doc. 64 at 2). Essentially, PIB has incorporated all of
those arguments that it made in response to Catlin's Motion To Dismiss (doc. 53) in response to
the Added Syndicates' Motion To Dismiss (doc. 63).

[4] A counterclaim is treated under the same motion to dismiss standards as a complaint.
*Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005); *Fabricant
v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001).

complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## III. FACTUAL BACKGROUND

### A. The Complaint and the Insurance Policy[5]

On or about May 8, 2015, Ramuji, though Randy Jones & Associates, submitted a signed Commercial Insurance Application for commercial property coverage for its motel located in Boaz, Alabama. (Doc. 1 at 3).

Underwriters at Lloyd's of London (namely, Catlin and the Added Syndicates) issued a policy to Ramuji effective from May 9, 2015, through May 9, 2016. (*See* Doc. 1-4, the "Policy"). The Policy provided $1,732,136.00 in building coverage for the motel, in addition to $150,000.00 in business personal property coverage, $200,000.00 in business income with extra expense coverage, and $15,000.00 in coverage for an outdoor sign, totaling to an insurance limit of $2,097,136.00. (Doc. 1 at 4).

A fire loss occurred at the insured motel on April 2, 2016. (*Id.* at 6). Catlin

---

[5] Although the Motions To Dismiss are directed to the Amended Pleading, the allegations in the complaint (doc. 1) and the provisions of the insurance policy (doc. 1-4) attached thereto are helpful in understanding the nature of the case.

and the Added Syndicates acknowledged Ramuji's claim, commenced an investigation, and reserved their rights under the Policy by letter dated April 7, 2016. (*Id.*). On April 25, 2016, three weeks after the fire loss, Ramuji requested that PIB be added to the Policy as a mortgagee "effective at inception." (*Id.*). Ramuji was advised that PIB could not be added retroactively as a mortgagee but could be added by endorsement effective as of the day of the request. (*Id.*). Accordingly, PIB was added as a mortgagee effective as of April 25, 2016. (*Id.* at 7). Though PIB has made a verbal request for coverage under the Policy as a mortgagee, no written claim or Proof of Loss has been tendered by PIB as of the date of the filing of the complaint. (*Id.*).

Based on their investigation, Catlin and the Added Syndicates determined that the Policy was subject to rescission based upon material misrepresentations in its application, including the nondisclosure of two unsatisfied and unreleased liens against Ramuji, as well as violations of Policy provisions and endorsements. (*Id.*). On August 16, 2016, Catlin and the Added Syndicates advised Ramuji that the Policy was subject to rescission, and they refunded Ramuji's premium (*Id.* at 9).

### B.    The Amended Counterclaim and Third-Party Claims

Back in 2004, PIB extended a loan to Ramuji in exchange for the execution of a mortgage on Ramuji's motel property in Boaz, Alabama. (Doc. 46 at 3). At all

relevant times, PIB has been the mortgagee on the Property and is the equitable title holder to the property. *Id.*; *see also* Exhibit 1, (Doc. 46 at 27-29) (mortgage deed between Ramuji and PIB).[6]

Ramuji has maintained insurance on the Property since the mortgage was executed by PIB in 2004. (*Id.* at 3). As of August 8, 2014, PIB was listed as an "Additional interest . . . Mortgagee" on a standard "Evidence of Property Insurance" form prepared by Randy Jones & Associates, Inc. (*Id.* at 4).

---

[6] Catlin attached five exhibits to its initial complaint (doc. 1), and PIB included four exhibits in the body of its Amended Pleading (doc. 46). Because these exhibits were attached to pleadings, the Court will treat them as part of the pleadings and will consider the statements contained therein as true for the purposes of this Motion. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2001) (in considering a motion to dismiss, "the court limits its consideration to the pleadings and exhibits attached thereto") (internal citation omitted). As the Eleventh Circuit has explained,

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern. *See Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons*, 113 F.2d at 813 ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (emphases supplied). Furthermore, the insurance policy is (1) central to the claims and (2) its authenticity is not challenged, as evidenced by the fact that PIB re-attached the policy (doc. 59-3) as an exhibit in response to Catlin's Motion To Dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Therefore, these exhibits will control in any situation where they contradict any general or conclusory assertions made by PIB.

On June 5, 2015, another "Evidence of Property Insurance" form also listed PIB as an "Additional Interest . . . Mortgagee," effective from May 9, 2015, to May 9, 2016 . (*Id.*). The date of the fire loss, April 2, 2016, fell within the coverage period listed on this form. (*Id.*). After the fire, PIB contacted the Jones Agency and was told that a Proof of Claim had been filed. (*Id.*). No one at the Jones Agency either told PIB that it needed to file a Proof of Claim or otherwise indicated that there was any problem with the claim. (*Id.* at 4-5).

On August 16, 2016, a letter from Promont Advisers, LLC, "on behalf of Certain Underwriters at Lloyd's London" informed Ramuji, with a formal copy being sent to PIB, that insurance coverage for the loss had been denied. (*Id.* at 5).

## IV.    ANALYSIS

The counterclaims asserted against Catlin include claims for declaratory relief (Count I), breach of contract (Count II), negligent and wanton procurement of insurance (Counts III and IV), bad faith (Count V), fraud (Count VI), and conspiracy to commit fraud. (Count VII). (Doc. 46 at 5-15). The third-party claims asserted against the Added Syndicates include claims for declaratory relief (Count I), breach of contract (Count II), negligent and wanton procurement of insurance (Counts III and IV), fraud (Counts V and VI), and conspiracy to commit fraud. (Count VII). (Doc. 46 at 15-25).

## A.     Breach of Contract Claims

In Count II of the amended counterclaims against Catlin and Count II of the third-party claims against the Added Syndicates, PIB pursues recovery for breach of contract. (Doc. 46 at 6-7, 16-17). The elements of a breach of contract claim under Alabama law are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002) (internal citation omitted). In its Amended Pleading, PIB asserts both that Catlin and the Added Syndicates directly breached a contract with PIB and that PIB should be able to recover as a third-party beneficiary of the insurance contract.

### 1.     *Direct Theory*

In Alabama, recovery of proceeds under an insurance policy is typically limited to the named insureds who are a party to the insurance contract. This is due in part to the fact that a contract of insurance is "a personal contract that inures to the benefit of the party with whom it is made and by whom the premiums are paid." *Gay v. Hubbard*, 678 So.2d 1156, 1157 (Ala. Civ. App. 1996) (citing *Dickerson v. Stewart*, 473 So. 2d 1078, 1080 (Ala. Civ. App. 1985)); *see also Commercial Fire Ins. Co. v. Capital City Ins. Co.*, 81 Ala. 320, 323-24, 8 So. 222, 223 (1886) (property insurance is "a contract of indemnity personal to the

assured").

Further, the general rule is that a mortgagee "has no claim to the benefit of a[n] insurance policy unless he has been named loss-payee or the or the policy has otherwise been assigned to him." *Calvert Fire Ins. Co. v. Environs Development Corp.*, 601 F.2d 851, 858 (5th Cir. 1979).[7] Accordingly, when not named in the policy, a mortgagee is merely an equitable lienholder as to the insurance proceeds whose right to recover is contingent on the insured's ability to recover. *Id.* at 858.

Courts look to the language of an insurance policy to determine whether a particular party is named as an insured. *See, e.g., Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156 (Ala. 2006) (construing policy language to determine whether a party was an insured). Alabama law makes clear that "[i]nsurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved." *Progressive Specialty Ins. Co. v. Green*, 934 So.2d 364, 367 (Ala. 2006) (citations omitted); *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy...by making a new contract for the parties.") (citation omitted).

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to 1981.

The terms of the Policy are clear that the insurer is required to pay claims to a mortgagee <u>only if</u> the mortgagee is named either in the Declarations of the Policy or by endorsement. The Mortgage Clause of the Policy states as follows:

> 31.     Mortgage Clause.
>
> Loss or damage shall be payable to the mortgagee (or trustee) <u>named in the Declarations or by endorsement</u>, as interest may appear <u>under all present or future mortgages upon the property herein described</u>, in order of precedence of said mortgages. This insurance, as to the interest of the mortgagee (or trustee) only, shall not be invalidated by:
>
> > a.     Any act or neglect of the mortgagor or owner of the herein described property;
> >
> > b.     Any foreclosure or other proceedings or notice of sale relating to the property;
> >
> > c.     Any change in the title or ownership of the property; or
> >
> > d.     Any occupation of the premises for purposes more hazardous than are permitted by this policy;
>
> . . . .
>
> If we pay the mortgagee or trustee any sum for loss or damage under this policy and deny payment to you because of your acts or because you have failed to comply with the policy terms, the mortgagee's or trustee's rights will be transferred to us for the amount of our payment. <u>The mortgagee's or trustee's right to recover the amount of their claim will not be impaired</u>. At our option, we may pay to the mortgagee or trustee the whole principal due plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

(Doc. 1-4 at 9) (emphases added).

PIB hangs its hat on the language in the Mortgage Clause providing that "interest may appear under all present or future mortgages upon the property herein described" and that the mortgagee's "right to recover the amount of their claim will not be impaired." *Id.* However, PIB completely ignores the fact that the Mortgage Clause only applies to those entities who are <u>named in the Declarations or by endorsement</u>. As neither the Declarations or nor any endorsement in effect as of the date of the loss includes PIB, the mortgagee clause included above simply does not confer any contract rights upon it. The mere fact that PIB is a mortgagee of or has an interest in the <u>property</u> does not meant that it has any legally recognized and direct contractual interest in the <u>Policy</u>.[8]

PIB's breach of contract claims also rely heavily on the three "Evidence of Property Insurance" forms issued prior to the fire loss. One of those forms was created on August 8, 2014, nine months prior to when the Policy became effective on May 9, 2015. *See* Exhibit 2, (Doc. 46 at 31). Another form was created on May

---

[8] PIB cites to two cases to support its claim that it has an insurable interest in the property. *See Baldwin Mut. Ins. Co. v. Henderson*, 580 So.2d 574 (Ala. 1991) and *Cavalier Ins. Corp. v. Hulsey*, 333 So. 2d 594 (Ala. Civ. App. 1976). (Doc. 59 at 14-15). However, both cases addressed whether a mortgagee has an insurable interest in a <u>property</u> following a loss, not whether an mortgagee who is not listed in a policy may bring a direct breach of contract claim against an insurer under that <u>policy</u>. *See Baldwin*, 580 So. 2d at 575 (concluding that a party named as the loss payee in the insurance policy had a "valid insurable interest in the house"); *Cavalier*, 333 So. 2d at 596 (concluding that a bank, which was a secured creditor on the property but which was not listed as a loss payee in the policy, was a "party in interest under Rule 19(a)" of the Alabama Rules of Civil Procedure). Accordingly, these cases are inapplicable to PIB's contractual claims.

8, 2015, one day prior to the Policy's effective date. *See* Exhibit 4, (Doc. 46 at 33). The third form was created on June 5, 2015, which falls within the coverage dates of the Policy. *See* Exhibit 3, (Doc. 46 at 32). However, this form, and in fact all three forms, explicitly state at the top of the form:

> THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

(Doc. 46 at 31-33).[9]

Accordingly, coverage was governed exclusively by the terms of the Policy, which does not list PIB as an insured or additional insured. In fact, in its response brief, PIB implicitly acknowledges that it was not listed in the Policy Declarations or by endorsement as of the date of the loss. *See* (Doc. 59 at 7) ("PIB understands

---

[9] The parties also vigorously dispute the applicability of these Evidence of Property Insurance forms for an alternate reason: the policy number on each of the three forms does not match the number of the applicable Policy, ULL20018, which was in effect as of the date of the loss. While PIB contends that the lack of continuity between the policy number of the Policy itself and the policy number listed on the Evidence of Property Insurance forms is merely a result of a mistake or error (doc. 59 at 7), Catlin and the Added Syndicates counter that the discrepancy further bolsters their claim that PIB cannot and should not rely on the three forms instead of the Policy and its endorsements. However, the Court need not resolve this dispute, given the explicit disclaimer on each form that it "confers no rights upon the additional interest below" and is "issued as a matter of information only."

that [Catlin and the Added Syndicates] mistakenly refused to add PIB to the Policy, as the Policy should have reflected all along that PIB was the mortgagee.").

PIB also argues that Catlin and the Syndicates issued an endorsement to the Policy in order to list PIB as a mortgagee. (Doc. 46 at 6). However, the endorsement adding PIB as a mortgagee was effective as of April 25, 2016, three weeks <u>after</u> the fire loss occurred on April 2, 2016. PIB was not a named insured on the Policy or on any endorsement <u>as of the date of the loss</u>, thereby precluding direct recovery under the contract. *See First Fed. Sav. & Loan Ass'n of Hamilton v. Haley*, 377 So. 2d 1082, 1085-85 (Ala. Civ. App. 1979), *writ quashed sub nom Ex parte First Fed. Sav. & Loan Ass'n of Hamilton, Ala.*, 377 So. 2d 1086 (Ala. 1979) ("The liability of the insurer becomes fixed as of the date of the loss[.]"); *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540 (11th Cir. 1986) (applying Alabama law, "the amount of the debt for which [the insurer] is liable is fixed on the date of the fire").

Accordingly, as PIB was not a named insured on the date of loss, and as the endorsement adding it to the Policy after the loss did not make PIB a party to the contract at the time of the loss, Catlin and the Added Syndicates' Motions To Dismiss are due to be **GRANTED** as to PIB's breach of contract claim under a

direct theory of recovery.

## 2. *Third-Party Beneficiary Theory*

Though PIB may not recover under a direct theory of liability as a non-party

to the contract of insurance, an exception exists when the claimant is a third-party

beneficiary to a contract between the insurer and another person or entity. The

Alabama Supreme Court has recounted the law governing contractual third-party

beneficiary status in relevant part as follows:

> "[i]f one person makes a promise for the benefit of a third party, such beneficiary may maintain an action thereon, though the consideration does not move from the latter." *Franklin Fire Ins. Co. v. Howard*, 230 Ala. 666, 667-68, 162 So. 683, 684 (1935).
>
> > " ' "To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." ' "
>
> *H.R.H. Metals, Inc. v. Miller*, 833 So.2d 18, 24 (Ala. 2002)(quoting *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So.2d 99, 101-02 (Ala. 1987)). Further, " ' "[i]t has long been the rule in Alabama that one who seeks recovery as a third-party beneficiary of a contract must establish that the contract was intended for his direct, as opposed to incidental, benefit." ' " *Morris Concrete, Inc. v. Warrick*, 868 So.2d 429, 434 (Ala. Civ. App. 2003)(quoting *McGowan v. Chrysler Corp.*, 631 So.2d 842, 848 (Ala. 1993)(quoting in turn *Mills v. Welk*, 470 So.2d 1226, 1228 (Ala. 1985))). "[W]e look[] to the complaints and the surrounding circumstances of the parties to ascertain the existence of that direct benefit." *Holley v. St. Paul Fire & Marine Ins. Co.*, 396 So.2d 75, 80 (Ala.1981) (citing *Zeigler v. Blount Bros. Constr. Co.*, 364 So.2d

1163 (Ala.1978)); *see also Anderson v. Howard Hall Co.*, 278 Ala. 491, 179 So.2d 71 (1965).

*Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1250 (Ala. 2005) (precluding summary judgment because a genuine issue of material fact existed as to whether the claimant was an intended beneficiary of the contract).

The Court observes that the only case cited by Catlin and the Added Syndicates in their Motions for the proposition that PIB is not entitled to assert a third-party beneficiary claim was a district court case from the Eastern District of Pennsylvania, applying New York law, that is in no way binding on this Court. (*See* Doc. 53 at 17, Doc. 63 at 17) (citing *Galecor, Inc. v. Institute of London Underwriters*, 729 F. Supp. 1101 (E.D. Pa. 1990)). Though Catlin cites, in its reply brief, a Supreme Court of Alabama case which addressed third-party beneficiary contractual claims, that court was presented with summary judgment records and relied substantially on factual evidence when determining that there was no material support for the plaintiff's third-party beneficiary claim. *See Bernals, Inc. v. Kessler Greystone, LLC*, 70 So. 3d 315, 320 (Ala. 2011).

At this preliminary stage, the Court is not persuaded that PIB has not plausibly stated a claim for relief under Alabama law for a breach of contract claim under a third-party beneficiary theory, particularly given PIB's allegation that the coverage "was <u>intended</u> to cover the interests of the mortgagee, PIB."

18

(Doc. 46 at 7) (emphasis added). Accordingly, Catlin and the Added Syndicates'
Motions To Dismiss are due to be **DENIED** as to PIB's third-party beneficiary
contractual claims.

### B. Negligent and Wanton Procurement of Insurance Claims

In Counts III and IV of PIB's amended counterclaims against Catlin and
Counts III and IV of PIB's third-party claims against the Added Syndicates, PIB
alleges claims of negligent and wanton procurement of insurance. (Doc. 46 at 7-9,
17-19). Catlin and the Added Syndicates have moved for dismissal on the basis
that they owed no duty to procure insurance to PIB. Given that Ramuji, not PIB,
was the party that actually applied for insurance in connection with the motel
property, they allege that any duty to procure insurance was owed to Ramuji, as
the insured, rather than to PIB, as the mortgagee.

The Alabama Supreme Court has stated that "when an insurance agent or
broker, with a view to compensation, undertakes to procure insurance for a client,
and unjustifiably or negligently fails to do so, he becomes liable for any damages
resulting therefrom." *Maloof v. John Hancock Life Ins. Co.*, 60 So.3d 263, 272
(Ala. 2010) (citation omitted) (affirming dismissal of negligent and wanton
procurement of insurance claims).

Moreover, like any negligence claim, "a claim in tort alleging a negligent

failure of an insurance agent to fulfill a voluntary undertaking to procure

insurance...requires demonstration of the classic elements of a negligence theory,

*i.e.*, (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Alfa Life Ins.*

*Corp. v. Colza*, 159 So. 3d 1240, 1248 (Ala. 2014) (internal citations and

quotations omitted). Once an insurance agent "undertakes to procure insurance for

a client," the agent owes a duty "to exercise reasonable skill, care and diligence in

effecting" the coverage. *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*,

361 So. 2d 1060, 1065 (Ala. 1978) (citation omitted).

The Court is persuaded by Catlin and the Added Syndicates' argument that

PIB's negligent and wanton procurement claims should be dismissed because PIB

did not complete the insurance application. PIB has not alleged that it applied for

insurance at any point in time relevant to this action; rather, it alleges that "Ramuji

has maintained insurance on the Property since the mortgage was executed by PIB.

At all times, Ramuji has insured the property and listed PIB as an additional

insured." (Doc. 46 at 3-4). PIB has alleged no facts demonstrating that either

Catlin or the Added Syndicates owed PIB a duty to procure insurance. PIB has

also cited no authority recognizing that a party who did not apply to procure

insurance, and who is not a named insured of the property in question, could

pursue a negligent or wanton procurement of insurance claim against either the

agent of an underwriter or the underwriters themselves.[10]

Furthermore, contributory negligence is a complete defense to a negligence claim under Alabama law. *Colza*, 159 So. 3d at 1248 (citing *Mitchell v. Torrence Cablevision USA, Inc.*, 806 So.2d 1254, 1257 (Ala. Civ. App. 2000)). Applying Alabama's strict contributory negligence standard to procurement claims, the Alabama Supreme Court held that "any negligent-procurement claim is barred by the doctrine of contributory negligence" and judgment as a matter of law is required "when documents available to the insured clearly indicate that the insurance in fact procured for the insured is not what the insured subsequently claims he or she requested the agent to procure." *Colza*, 159 So. 3d at 1255; *see also id.* at 1252 ("By not reading the documents, they took a risk and put themselves in danger's way. We do not think it unreasonable to conclude as a matter of law that, in this day and age, any adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the

---

[10] PIB cites to two cases to support its negligent procurement of insurance claims. *See* (Doc 59 at 19-20) (citing *Vick v. H.S.I. Management, Inc.*, 507 So.2d 433 (Ala. 1987) and *State Farm Fire and Cas. Co. v. Green*, 624 So.2d 538, 539 (Ala. 1993)). However, neither of these cases addresses or even mentions procurement of insurance claims and, accordingly, they are inapposite.

transaction that is the subject of the contract.").[11]

Even assuming, *arguendo*, that Catlin and the Syndicates did owe a duty to obtain insurance for PIB, PIB's negligent procurement claims fail because the Policy that was in full force and effect at the time of the loss did not list PIB as an additional named insured. Had PIB reviewed the Policy, it would have known that it was not listed as a mortgagee under the Declarations page or by endorsement. PIB's own contributory negligence bars recovery under a negligent procurement theory. Accordingly, Catlin and the Added Syndicates' Motions are due to be **GRANTED** as to the negligent and wanton procurement claims in Counts III and IV of the counterclaims and third-party claims.

## C.     Fraud Claims

In Count VII of the amended counterclaims against Catlin and Counts V and VI[12] of the third-party claims against the Added Syndicates, PIB asserts, without

---

[11] As Catlin and the Added Syndicates point out, *Colza* involved a claim made against an agent rather than against a principal. However, PIB predicates its claims against Catlin and the Added Syndicates in part on agency law, claiming that "in this case, under general principles of agency law, [Randy] Jones & Associates should be considered agents of Lloyd's, or at a minimum, in this case should be considered as such." (Doc. 59 at 13). The Court need not actually reach the question of whether Jones & Associates and Jon Pair were agents of Catlin and the Added Syndicates. For the purpose of the Motions To Dismiss, and specifically the negligent procurement of insurance claims, PIB's reliance on the purported agency relationship positions the parties in this case comparably with those in *Colza*.

[12]  Counts V and VI of the third-party claims against the Added Syndicates are identical and therefore duplicative.

distinguishing between the causes of action, that they committed "fraud, fraudulent misrepresentation and/or suppression, reckless indifference, or innocent misrepresentation." (Doc. 46 at 11-12, 19-21). Catlin and the Added Syndicates have moved to dismiss PIB's fraud claims on the basis that PIB could not have reasonably relied on the Evidence of Property Insurance forms. PIB's response in defense of its fraud claims is, in its entirety, as follows:

> If the assertions made by [Catlin and the Added Syndicates] are true, then someone has lied to PIB, because the representations in Exs. 2, 3, and 4 in Doc. 46[13] are untrue.

(Doc. 59 at 21).

Reasonable reliance is an essential element of a misrepresentation claim. *Alabama Elec. Co-op., Inc. v. Bailey's Const. Co., Inc.*, 950 So. 2d 280, 283 (Ala. 2006). First, like in the context of a negligent procurement of insurance claim, an insured has a duty to read an insurance policy. The Alabama Supreme Court has affirmed the entrance of judgment as a matter of law with regard to a fraud claim when "plaintiffs have ignored clear written terms in documents provided them in association with a transaction" and has stated that it is "almost never reasonable for an individual to ignore the contents of documents given him or her in association with a transaction." *Colza*, 159 So. 3d at 1251-52 (citation omitted).

---

[13]   PIB's reference to Exhibits 2, 3, and 4 corresponds with the three Evidence of Property Insurance forms attached to PIB's Amended Pleading. (*See* Doc. 46 at 31-33).

In *Bailey's*, the Alabama Supreme Court cited with substantial approval a federal district court case, applying Texas law, that held as a matter of law that a client could not have reasonably relied upon a certificate of insurance in order to prevail on a claim of negligent or fraudulent misrepresentation. *Baileys*, 950 So. 2d at 284-285 (citing *TIG Insurance Co. v. Sedgwick James of Washington*, 184 F. Supp. 2d 591 (S.D. Tex. 2001)), *aff'd*, 276 F.3d 754 (5th Cir. 2002)). The court in *Bailey's* summarized the holding in *TIG* as follows:

> "[t]he Court concludes that [the client], claiming to be an additional 'insured' under [the policy], should be held to the same obligation as a named insured to review a policy of insurance on which it seeks to rely, and its reliance solely on the agent's certificate of insurance is not reasonable under the circumstances presented by the admissible evidence. While the cited cases do not involve additional insureds, there is no admissible evidence to suggest that [the client], had it made the request, would have been unable to obtain and read the insurance policy in issue....

> "Moreover, [the client], the holder of a certificate of insurance, was warned it was not entitled to rely on the certificate itself for coverage. The certificate stated to the holder that the certificate did not create coverage. *See Granite[ Constr. Co. v. Bituminous Ins. Cos.]*, 832 S.W.2d [427,] 429 [(Tex. Ct. App.1992)].... The certificate of insurance issued by [the insurance broker] prominently stated that it was 'issued as a matter of information only' and did not 'amend, extend or alter' coverage provided by the listed policies. Had Plaintiffs taken the reasonable step of obtaining a copy of [the policy] ... Plaintiffs would have learned there was no additional insured coverage in the policy at all.

> "Thus, the Court finds that Plaintiffs' reliance upon [the insurance broker's] representation of [the client's] additional insured status was not

reasonable. Accordingly, as a matter of law, Plaintiffs' claims for negligent and fraudulent misrepresentation fail."

*Bailey's*, 950 So. 2d at 285 (citing *TIG*, 184 F. Supp. 2d at 603-04) (emphases added). Simply put, the court in *TIG* determined, and the court in *Bailey's* affirmed, that it is unreasonable for a party to rely on a certificate of insurance that is issued as a matter of information only as proof that the party is named as an additional insured on a policy.

In further support of its holding, the Alabama Supreme Court quoted, with approval, the following language:

> *See also* 17 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 242:33 (3d ed. 1997) ("Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A certificate of insurance is not part of the policy—if it states that there is coverage but the policy does not, the policy controls."); Richard H. Glucksman & Glenn T. Barger, Additional Insured Endorsements: Their Vital Importance in Construction Defect Litigation, 21 Construction Law. 30, 33 (Winter 2001) ("A developer or general contractor generally should demand more proof [than just a certificate of insurance], including a specific additional insured endorsement, to confirm their additional insured status.").

*Id.* at 285 (emphasis added); *see also Webb v. Reese*, 505 So. 2d 321 (Ala. 1987) (under the reasonable reliance standard, a fraud claim cannot be sustained when the allegations of fraud run counter to the language of the document governing the rights of the parties to that contract). In *Webb*, the Alabama Supreme Court

decided a case where the plaintiff alleged fraud based on a misrepresentation that was contrary to contractual terms. The court concluded that "[n]o useful purpose would be served by reciting the facts here" because even if the alleged misrepresentation occurred, the plaintiff "had no legal right to rely on that statement" and "[wa]s not authorized to disregard the express terms of the contract and rest her claim on fraud, claiming that she relied on a statement which is contrary to the contract terms." *Id.* at 322.

PIB claims that Catlin and the Added Syndicates misrepresented or suppressed the correct nature and extent of the coverage and asserts that PIB relied on the representations in the Evidence of Property Insurance forms, which list PIB as an "additional interest." *See* Ex. 2-4, (Doc. 46 at 31-33). However, like the plaintiffs in *Bailey's* and *TIG*, PIB was clearly warned by a disclaimer that it could not rely on statements therein for proof of coverage but rather must look to the Policy itself. As discussed previously in the context of PIB's breach of contract claims, these Evidence of Property Insurance forms expressly state that they did not "affirmatively or negatively amend, extend, or alter" coverage afforded by the Policy. (*Id.*). Each disclaimer on each form further provided that it was created "as a matter of information only" and "confer[red] no rights." (*Id.*).

Given that the policy controls when a conflict as to coverage exists between

a policy and a certificate of insurance, *see* Couch on Insurance § 242:33 (3d ed. 1997), and keeping in mind that the forms relied on by PIB expressly stated they were "for informational purposes only," this Court concludes that it was not reasonable for PIB to rely on the Evidence of Property Insurance forms rather than on the Policy itself. Accordingly, Catlin and the Added Syndicates' Motions To Dismiss are due to be **GRANTED** as to PIB's fraud claims.

### D.    Civil Conspiracy to Commit Fraud Claims

In Count VII of the amended counterclaims against Catlin and Count VII of the third-party claims against the Added Syndicates, PIB alleges that they conspired, both directly and acting through Jon Pair and Randy Jones & Associates, Inc., to defraud PIB (Doc. 46 at 12-15, 22-25). Catlin and the Added Syndicates have moved this Court to dismiss PIB's civil conspiracy claims because (1) a civil conspiracy claim must fail when the underlying tort fails and (2) Catlin and the Added Syndicates were not "legally capable" of committing the underlying tort of fraud.

"Alabama recognizes civil conspiracy as a substantive tort." *DGB, LLC v. Hinds*, 55 So.3d 218, 234 (Ala. 2010) (internal citation and alteration omitted). "'In essence, civil conspiracy is a combination of two or more persons to do: (a) something that is unlawful; [or] (b) something that is lawful by unlawful means.'"

*Id.* (citing *Purcell Co. v. Spriggs Enters., Inc.*, 431 So. 2d 515, 522 (Ala. 1983)).

However, a plaintiff alleging a conspiracy must have a valid underlying cause of

action. *Id.* (citing *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280 (Ala.

1993)). A civil conspiracy claim fails if the underlying act or acts do not support

an action. *Triple J. Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993);

*Callens v. Jefferson Cty. Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000) (same).

For the reasons already set forth in this opinion, PIB has not alleged valid

underlying causes of action for fraud. Accordingly, PIB has also failed to state a

claim of civil conspiracy to commit fraud because there is no "actionable wrong"

to support a conspiracy theory. *See Purcell*, 431 So.2d at 522. Therefore, the

Motions are due to be **GRANTED** as to the claims of conspiracy to commit fraud.

### E.     Bad Faith Claims

In Count V of the amended counterclaims, PIB asserts that Catlin and the

Added Syndicates acted in bad faith by refusing to cover the damage caused by the

fire loss.[14] However, as this Court has determined earlier in this opinion, PIB was

not a direct party to the contract. Therefore, as a matter of law, PIB cannot recover

---

[14] In its Amended Pleading, PIB brings a claim for bad faith only in its <u>counterclaims</u>
against Catlin and does not appear to have asserted any bad faith <u>third-party claims</u> against the
Added Syndicates. *Cf.* (Doc. 46 at 9-10) *with* (*id.* at 15-25). However, for the purposes of
completeness, and to the extent that PIB intended to assert a claim against the Added Syndicates,
this Court will analyze PIB's bad faith claims as if they were asserted against the Added
Syndicates as well as Catlin.

on its bad faith failure to pay claim. *See Colza*, 159 So. 3d at 1247 (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999) (recognizing that "the plaintiff in a bad faith refusal case has the burden of proving: (a) an insurance contract between the parties and a breach thereof by the defendant . . . .") (internal citation omitted)); *see also Aplin v. American Sec. Ins. Co.*, 568 So. 2d 757, 758 (Ala. 1990) ("proof of the existence of an insurance contract between the parties is a threshold requirement in a bad faith claim.").

Furthermore, even if construed as a third-party beneficiary, PIB cannot maintain a bad faith insurance claim under Alabama law. As another district court within this Circuit has explained,

> [a]s a general rule, Alabama law confines bad faith claims to situations where there is an insurance contract between the parties. *See Stewart v. State Farm Ins. Co.*, 454 So.2d 513, 514 (Ala.1984) (under Alabama law, "the tort of bad faith refusal to pay is that refusal to pay valid claims made by the insured of his insurance carrier"); *Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061, 1077 (S.D. Ala.2007) (explaining that, for both ordinary and extraordinary bad faith claims, Alabama law requires plaintiff to show, inter alia, "the existence of an insurance contract between the parties"). Indeed, the Alabama Supreme Court has explained in no uncertain terms that "a party cannot bring an action against an insurance company for bad-faith failure to pay an insurance claim **if the party does not have a direct contractual relationship with the insurance company**." *Williams v. State Farm Mut. Auto. Ins. Co.*, 886 So.2d 72, 75–76 (Ala. 2003) (emphasis added). The limitations on the scope of the bad faith tort in Alabama, and the Alabama Supreme Court's marked reluctance to relax those limitations, are accurately summarized as follows:

> "The tort of bad faith refusal to pay a claim has heretofore been applied **only in those situations where a typical insurer/insured relationship existed**; that is, where the insured or his employer entered into a written contract of insurance with an insurer and premiums were paid into a central fund out of which claims were to be paid. **We are very hesitant to expand the tort beyond these narrow circumstances**."

*Peninsular Life Ins. Co. v. Blackmon*, 476 So.2d 87, 89 (Ala. 1985) (emphasis added); *see also Metmor Financial, Inc. v. Commonwealth Land Title Ins. Co.*, 645 So.2d 295, 297 (Ala. 1993) (for tort cause of action for bad faith to arise, "[a]n insurer-insured relationship must exist"); *Berry v. United of Omaha*, 719 F.2d 1127, 1128 (11th Cir.1983) (explaining that Alabama gives "insurance policy holders (but not third party beneficiaries) an action in tort, in addition to their contract action, against an insurance company that refused payment of a claim ...").

Thus, Alabama courts have circumscribed the tort of bad-faith refusal to pay to circumstances in which there is a direct contractual relationship between plaintiff and insurer, and a typical insurer/insured relationship exists. Nothing in plaintiff's filings or the Court's own research supports a conclusion that third-party beneficiaries such as Jones may invoke the tort of bad faith against insurers in Alabama. In fact, Jones' briefs are devoid of any argument or analysis that third-party beneficiaries are entitled to bring bad faith claims under Alabama law. Simply put, Jones proffers no authorities and makes no arguments that, despite the Eleventh Circuit's opinion to the contrary in *Berry*, the necessity of a direct contractual relationship identified in *Williams*, and the Alabama Supreme Court's hesitance to enlarge the tort as described in *Peninsular Life*, Alabama courts would expand the tort of bad faith to allow third-party beneficiaries to assert such a claim against insurers.

*Jones v. General Ins. of America*, 2009 WL 1537866, at *12-13 (S.D. Ala. May 29, 2009) (Steele, J.) (bolding in original, underline added).

Like in *Jones*, PIB has presented no analysis and has cited no authority to

support its bad faith claim, stating only that it is an "insured under the terms of the Policy, and as such it has standing to pursue its claims of bad faith." (Doc. 59 at 21-22). This Court disagrees with PIB's contention that it is a named insured under the Policy, and PIB has offered no argument in favor of the cognizability of a bad faith claim brought by a third-party beneficiary. Furthermore, the above-cited authority in *Jones* controls this situation, particularly given that the Eleventh Circuit in *Berry* found that Alabama law explicitly bars third-party beneficiaries from bringing bad faith causes of action. Accordingly, this Court finds that PIB is ineligible to bring bad faith claims against Catlin, and the Added Syndicates to the extent these claims are asserted against them, because it is, at most, a third-party beneficiary that lacks a direct contractual relationship with them. The Motions are due to be **GRANTED** as to PIB's bad faith claims.

### F. <u>Declaratory Relief</u>

Finally, in Count I of the amended counterclaims against Catlin and Count I of the third-party claims against the Added Syndicates, PIB requests that this Court (1) declare that "PIB is the owner of equitable title to the Property and is indeed a named mortgagee under [Catlin and the Added Syndicates'] policy of insurance on the Property for the April 2, 2016, fire loss," and (2) "direct [Catlin and the Added Syndicates'] to pay PIB for its loss." (Doc. 46 at 6, 15-16). Catlin

and the Syndicates, in turn, assert that PIB does not allege a substantial, real and immediate controversy between the parties. (Doc. 53 at 11-15; Doc. 63 at 11-15).

PIB brings its claims for declaratory relief pursuant to the Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction... any court of the United States... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "case of actual controversy" must be (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). Under Section 2201(a), this Court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995); *see also MedImmune*, 549 U.S. at 126 ("The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so.") (internal citation omitted, emphasis in original).

At this 12(b)(6) stage, a dismissal of PIB's declaratory relief claims would

be premature. Catlin and the Added Syndicates essentially argue that these claims should be dismissed because no direct contractual relationship exists between PIB and themselves. However, to state a claim for declaratory relief, all that is required is for PIB to allege that there are adverse legal interests at issue in a "definite and concrete" dispute. *MedImmune*, 549 U.S. at 127. PIB has sufficiently alleged that a real, substantial, and concrete dispute exists over whether PIB has standing to bring a breach of contract claim as a third-party beneficiary. Accordingly, Catlin and the Added Syndicates' Motions are due to be **DENIED** as to PIB's declaratory judgment claims.

## V.     CONCLUSION

For the foregoing reasons, the Motions To Dismiss are hereby **GRANTED** in part and **DENIED** in part.

Catlin's Motion (doc. 53) is hereby **GRANTED** as to the negligent and wanton procurement, bad faith, fraud, and conspiracy to commit fraud claims brought against Catlin in Counts III-VII of PIB's amended counterclaims. (Doc. 46 at 7-15). Catlin's Motion is hereby **DENIED** as to the declaratory relief and third-party beneficiary contractual counterclaims brought against Catlin in Counts I and II of PIB's counterclaims. (Doc. 46 at 5-7).

The Added Syndicates' Motion (doc. 63) is hereby **GRANTED** as to the

negligent and wanton procurement, fraud, and conspiracy to commit fraud claims brought against the Added Syndicates in Counts III-VII of PIB's third-party claims. (Doc. 46 at 17-25). The Added Syndicates' Motion is hereby **DENIED** as to the declaratory relief and third-party beneficiary contractual claims brought against the Added Syndicates in Counts I-II of PIB's third-party claims. (Doc. 46 at 15-17).

      **DONE** and **ORDERED** this the 18th day of August, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge