# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **CATLIN SYNDICATED LIMITED,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **4:16-cv-01331-ACA** |
| | ] | |
| **RAMUJI, LLC, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION AND ORDER

Before the court are cross-motions for summary judgment filed by Defendant-Third Party Plaintiff Ramuji, LLC and Third-Party Defendants Randy Jones & Associates, Inc. ("RJA") and Jon Pair.[1]  (Docs. 269, 279).  The court will refer collectively to RJA and Mr. Pair as the "Agency Defendants."

Ramuji owned a motel which it sought to insure.  RJA is an insurance broker that Ramuji hired to procure the insurance policy for its motel, and Mr. Pair is one of RJA's insurance agents.  In applying for an insurance policy, the Agency Defendants omitted material information about outstanding judgments and tax liens

---

[1] Six motions for summary judgment are pending before the court.  (*See* Docs. 266, 274, 291, 293, 310).  These motions can be divided into two "sets": one set between Ramuji and the Agency Defendants, and one set between Peoples Independent Bank ("PIB"), Great American Assurance ("Great American"), and the Agency Defendants.  Because PIB, Great American, and the Agency Defendants represent that they "have agreed to all material terms of a settlement of all claims between them relating to this case" (doc. 349 at 2), this memorandum opinion addresses only the set of cross-motions between Ramuji and the Agency Defendants.

against Ramuji.  The parties disagree about whose fault the omission were, but they agree that, because of those omissions, an insurer issued to Ramuji a commercial insurance policy that was subject to rescission.  After Ramuji's motel was damaged in a fire and Ramuji made a claim under the policy, Ramuji's insurer filed this lawsuit seeking, among other things, a declaration that the policy was subject to rescission based on material misrepresentations made in the application (doc. 144 at 19–21) or alternatively that the policy did not cover Ramuji's loss because of Ramuji's breaches of the policy (*id.* at 22–24).

Ramuji's insurer has settled with Ramuji and its claims have been dismissed, but in the meantime Ramuji filed a third party complaint against the Agency Defendants, asserting that they (1) negligently negotiated and procured the insurance policy ("Count One"); (2) wantonly failed to exercise reasonable care in negotiating and procuring the insurance policy ("Count Two"); (3) breached a contract to procure insurance for Ramuji ("Count Three"); and (4) engaged in fraud ("Count Four") (Doc. 167 at 13–19, 25–26).[2]

The Agency Defendants have moved for summary judgment on all of Ramuji's claims against them.  (Doc. 279).  Ramuji has moved for partial summary judgment as to the Agency Defendants' liability on all of the claims.  (Doc. 269).

---

[2] Ramuji asserted other claims against the Agency Defendants and other parties (*see* doc. 167 at 20–26), but the court has dismissed those claims (*see* docs. 249, 317).

The court **GRANTS IN PART** and **DENIES IN PART** the Agency Defendants'
motion for summary judgment, and **DENIES** Ramuji's motion for summary
judgment.

Because contributory negligence bars Ramuji's claim of negligent
procurement of insurance, the court **GRANTS** summary judgment in favor of the
Agency Defendants and against Ramuji on Count One, and **DENIES** Ramuji's
motion for summary judgment on that count. Because no reasonable jury could find
that the Agency Defendants acted wantonly, the court **GRANTS** summary judgment
in favor of the Agency Defendants and against Ramuji on Count Two, and **DENIES**
Ramuji's motion for summary judgment on that count. Because disputes of material
fact exist with respect to Ramuji's claim for breach of contract, the court **DENIES**
the Agency Defendants' and Ramuji's cross-motions for summary judgment on
Count Three. Finally, because Ramuji's reliance on any misrepresentations was
unreasonable as a matter of law, the court **GRANTS** the Agency Defendants' motion
for summary judgment on Count Four and **DENIES** Ramuji's motion for summary
judgment on that count.

## I.     BACKGROUND

On cross-motions for summary judgment, the court "draw[s] all inferences
and review[s] all evidence in the light most favorable to the non-moving party." *Fort
Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th

Cir. 2018) (quotation marks omitted). To accomplish that dictate, the court will describe the undisputed facts and note where the parties have disputes.

Ramuji owns a motel on the border of Boaz and Sardis, Alabama. (Doc. 270-1 at 149). Suresh Desai, one of Ramuji's members, ran the motel.[3] (*Id.* at 74–75, 111; Doc. 294-1 at 2). At all relevant times, Ramuji has had a mortgage on the property with Peoples Independent Bank ("PIB"); the mortgage requires Ramuji to obtain property insurance covering PIB. (Doc. 243-2 at 8; Doc. 270-1 at 12; Doc. 294-1 at 3).

After Ramuji's insurance policy was cancelled for non-payment in 2014, Mr. Desai contacted RJA about obtaining replacement insurance. (Doc. 294-1 at 3). At the time, Ramuji had two outstanding judgments against it. (*See* Docs. 144-1, 144-2). Mr. Desai testified that, when working with RJA on the 2014–2015 insurance police, he disclosed all judgments and liens against Ramuji, as well as the mortgage on the motel. (Doc. 270-1 at 15; Doc. 270-2 at 97, 103, 112, 116; Doc. 294-1 at 3–4). RJA's corporate representative testified that Mr. Desai did not disclose any judgments or liens, and both the representative and Mr. Pair testified that if Mr. Desai had disclosed judgments or liens, RJA would have included that information in any insurance application. (Doc. 294-82 at 27; *see also* Doc. 294-81 at 104–05). However, the application for insurance submitted in 2014 affirmatively

---

[3] Mr. Desai also goes by the name Sam Patel. (*See* Doc. 294-1 at 2).

represented that Ramuji did not have any judgments or liens against it and did not disclose the existence of any mortgagee. (Doc. 294-5 at 6–9).

RJA procured an insurance policy for Ramuji covering the May 2014—May 2015 period.[4] (*See* Doc. 270-2 at 96–98, 102–03; Doc. 294-1 at 3–4; Doc. 294-4 at 2). In August 2014, RJA prepared and submitted to PIB a document called "Evidence of Property Insurance," which identified PIB as the mortgagee and "additional interest" on the insurance policy. (Doc. 294-52 at 2; *see also* Doc. 294-81 at 55; Doc. 294-82 at 3–4, 11). However, the actual policy did not list PIB, or indeed anyone, as a mortgagee. (Doc. 294-4 at 20).

After Ramuji made two claims on the 2014–2015 policy, the insurer declined to renew the policy. (Doc. 294-1 at 5; Doc. 294-31 at 2). Mr. Desai returned to RJA seeking another insurance policy, and Mr. Pair worked on procuring a new policy for Ramuji. (Doc. 294-1 at 5; Doc. 270-2 at 108). According to Mr. Desai, Mr. Pair stated that he had all the information he needed to get a new insurance policy and he did not ask Mr. Desai any questions before filling out the insurance application, even though Mr. Desai again disclosed the existence of the mortgage. (Doc. 294-1 at 5; Doc. 270-2 at 108, 112–13, 119). Mr. Pair, however, denies knowing that PIB was the property's mortgagee or being asked to add PIB as an additional insured (doc.

---

[4] The parties dispute which RJA employee worked on obtaining the 2014–2015 insurance policy for Ramuji. Although each side has submitted evidence in support of its own position, the court finds that the dispute is not material.

294-1 at 50; doc. 294-81 at 102, 126), and he testified that if Mr. Desai had disclosed any liens, he would have included them in the insurance application (doc. 294-81 at 104–05).

The application for the 2015–2016 insurance policy did not list PIB as a mortgagee or an additional insured (*see* Doc. 294-7 at 9, 12, 14), nor did it disclose Ramuji's loss history, judgments, or liens (*id.* at 10–11, 17–18). Mr. Desai testified that Mr. Pair did not give him the application to read, but just presented him with the signature pages, which he signed without reading. (Doc. 294-1 at 5–6; Doc. 270-1 at 83–84; Doc. 270-2 at 110).

Certain underwriters at Lloyd's of London ("the Underwriters") subscribed to a commercial property insurance policy covering Ramuji from May 9, 2015, through May 9, 2016. (Doc. 144-11 at 5). Among other provisions, the policy required the insured to comply with federal, national, state, and local fire and safety codes. (Doc. 144-11 at 11, 32–33). The policy also contained a mortgage clause, which provided that "[l]oss or damage shall be payable to the mortgagee . . . named in the Declarations or by endorsement," even in the event of "[a]ny act or neglect of the mortgagor or owner of the herein described property." (Doc. 144-11 at 34). The mortgage clause provided that if the insurer paid the mortgagee but denied the insured's claim based on a failure to comply with the policy terms, the mortgagee's "rights will be transferred to [the insurer] for the amount of our payment." (*Id.*).

On April 2, 2016, a fire destroyed a large part of the motel. (Doc. 270-3 at 40; Doc. 294-1 at 3). After Ramuji made a claim under the insurance policy, the Underwriters denied the claim and sent Ramuji a letter notifying it that the policy was subject to rescission based on material misrepresentations made in the application and, in the alternative, that the policy did not provide coverage because of violations of a protective safeguards provision. (Doc. 144 at 19 ¶ 56). One of the Underwriters filed suit against Ramuji and PIB seeking, among other things, a declaratory judgment that the policy was subject to rescission *ab inbitio* and that PIB lacked standing to make a claim under the policy because it was not a named insured. (*Id.* at 19–22).

The lawsuit spawned a number of counterclaims, crossclaims, third party claims, and intervenor claims. (*See* Docs. 167, 188, 290). Most of those claims are not relevant to the cross-motions at issue in this memorandum opinion. Of relevance to this memorandum opinion are the third party claims that Ramuji filed against the Agency Defendants: the claims for negligent procurement of insurance (Count One), wanton procurement of insurance (Count Two), breach of a contract to procure insurance (Count Three), and fraudulent suppression (Count Four). All of those claims stem from the Agency Defendants' purported failure to include in the insurance application all of the information required to procure a valid insurance policy covering the motel.

## II. DISCUSSION

In deciding cross-motions for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Fort Lauderdale Food Not Bombs*, 901 F.3d at 1239. To avoid any confusion, the court will address each motion for summary judgment separately.

1. The Agency Defendants' Motion for Summary Judgment against Ramuji

The Agency Defendants seek summary judgment on all of Ramuji's third party claims against them. (Doc. 279).

a. *Count One (Negligence)*

In Count One, Ramuji asserts that the Agency Defendants were negligent in negotiating and procuring the 2015–2016 insurance policy, causing Ramuji damage because the insurer denied it coverage under the policy. (Doc. 167 at 13–15). Ramuji's second amended third-party complaint specifies that, among other things, the Agency Defendants failed to ensure that the insurance application was properly filled out and failed to ensure that the policy included PIB as an additional insured. (*Id.* at 14 ¶ 42(c), (e)).

"[W]hen an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom." *Crump v. Geer Bros.*,

336 So. 2d 1091, 1093 (Ala. 1976) (quotation marks omitted). To establish negligence in procuring an insurance policy, a plaintiff must demonstrate "the classic elements of a negligence theory, *i.e.,* (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Alfa Life Ins. Co. v. Colza*, 159 So. 3d 1240, 148 (Ala. 2014) (quotation marks omitted). The Agency Defendants argue that Ramuji cannot establish either a duty or proximate causation, and that even if it could, Ramuji's contributory negligence bars any recovery. (Doc. 279 at 21–26, 34–46). The court will address each argument in turn.

### i. Duty

First, the Agency Defendants contend that they did not owe Ramuji a duty because a duty arises only if insurance is actually obtainable, and Ramuji was uninsurable given its history of nonpayment and the presence of tax liens and judgments. (Doc. 279 at 21–22, 34–35). An insurance broker owes a duty "to exercise reasonable skill, care, and diligence in effecting insurance. . . . Where a broker undertakes to place insurance for another, it is his duty, in case he is unable to do so, to seasonably notify his principal." *Timmerman Ins. Agency, Inc. v. Miller*, 229 So. 2d 475, 477 (1969) (quotation marks omitted). But a plaintiff cannot establish a breach of duty (or damages) where "the evidence in the record does not demonstrate that the coverage [the plaintiff] wanted . . . was actually available from

any insurance provider." *Hawk v. Roger Watts Ins. Agency*, 989 So. 2d 584, 591 (Ala. Civ. App. 2008).

The undisputed facts show that the Agency Defendants undertook to procure insurance for Ramuji, which is the first requirement in the duty analysis. *See Timmerman Ins. Agency, Inc.*, 229 So. 2d at 477; (Doc. 270-2 at 108; Doc. 294-1 at 5; Doc. 294-31 at 2). The next question is whether "the coverage [Ramuji] wanted . . . was actually available from any insurance provider." *Hawk*, 989 So. 2d at 591.[5] There is evidence in the record that, during the time period in which Ramuji was applying for the 2015 policy, Great American knowingly issued policies to hotels and motels with outstanding judgments, liens, or both. (*See* Doc. 343-1 at 35–60). There is also evidence that, unlike the Underwriters, Great American does not automatically decline to quote a policy to a motel merely because of the existence

---

[5] The court notes that in the *Hawk* case, the issue was whether "the *type* of insurance [the plaintiff] insists he requested . . . was actually available from any insurance provider." 989 So. 2d at 590 (emphasis added). By contrast, the parties here do not dispute that the type of insurance Ramuji sought was available; they dispute whether Ramuji was insurable given its history of nonpayment and the outstanding judgments and liens against it. These seem to the court to be qualitatively different analyses: it is straightforward to determine whether a type of insurance exists, but it is almost impossible to step back in time and determine whether a different insurer, with different underwriting guidelines, would at that time have issued a policy in light of the now-obvious risk that the company presented. *See Madison Cty. v. Evanston Ins. Co.*, 340 F. Supp. 3d 1232, 1275–76 (N.D. Ala. 2018) (discussing *Hawk* and a federal district court opinion that relied on *Hawk*, and stating that those "decisions determined that the plaintiffs therein could not recover on their negligent failure-to-procure claims because the defendants owed no duty to procure—and concomitantly there existed no causation—when certain *types* of insurance were unavailable in the market.") (emphasis added). Ramuji contests the Agency Defendants' interpretation of *Hawk* and its progeny. (Doc. 348 at 9–14). For the sake of judicial economy, the court will assume that the Agency Defendants' interpretation prevails because even under that interpretation, Ramuji has presented evidence showing the availability of alternate insurance.

of a judgment or lien—nor even for having a policy canceled for nonpayment. (*See id.* at 61–67 (setting out the underwriting guidelines applicable in 2014)). Whether Great American would have issued a policy to Ramuji if presented with a complete and accurate application is a question of fact that this court cannot determine at the summary judgment stage.

## ii. Causation

Next, the Agency Defendants contend that Ramuji cannot establish proximate causation. They present two arguments in support: (1) the lack of alternate available coverage breaks the chain of causation; and (2) Ramuji's violations of the protective safeguards provision of the policy would have resulted in the denial of Ramuji's claim anyway. (Doc. 279 at 22–23, 35–46). The first argument is answered by the court's duty analysis: a jury must decide whether another insurer would have issued a policy to Ramuji. The second argument also fails given the parties' stipulated fact that the policy was properly rescinded.

As the Alabama Supreme Court has said, "[t]o rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, . . . to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made." *Nat'l Supply Co. v. S. Creamery Co.*, 140 So. 590, 592 (1932) (quotation marks omitted); *see also Vankineni v. Santa Rosa Beach Dev. Corp. II*, 57 So. 3d 760, 763 (Ala. 2010) ("[T]he effect of rescission

is to extinguish the contract.") (quotation marks omitted); *Clark v. Wilson*, 380 So. 2d 810, 812 (Ala. 1980) ("When [rescission] occurs the proper remedy is to restore all parties to the status quo ante . . . ."). Thus, if the policy was subject to rescission, it is "abrogate[d] and undo[ne]." *Nat'l Supply Co.*, 140 So. at 592. For the Agency Defendants to prevail on their causation argument, they would have to establish that the policy was *not* subject to rescission.

The court has not ruled on whether the Underwriters were entitled to rescind the policy because the Underwriters have settled with Ramuji and been removed from this lawsuit. (*See* Docs. 246, 249). But in the briefing on these cross-motions for summary judgment, the parties agreed that the policy was due to be rescinded based on the material omissions from the application. In its briefing on these cross-motions for summary judgment, Ramuji states: "It is . . . undisputed that Underwriters were entitled to rescind the Policy based on incorrect answers which the Agency Defendants placed on Ramuji's unsigned application." (Doc. 299 at 10). In the same document, Ramuji states that "[t]he Parties stipulate that [the insurer's agent] would not have quoted a premium, bound coverage, or issued the Policy on behalf of Underwriters to Ramuji had they known of the two judgments." (*Id.* at 21 ¶ 19). The Agency Defendants agreed with that statement.[6] (Doc. 304 at 9 ¶ 19).

---

[6] In the other set of cross-motions for summary judgment, the Agency Defendants expressly argue that the underlying insurance policy was "due to be rescinded" and that the insurer's "rescission was valid and due to be granted." (Doc. 274 at 24–25).

The court accepts the stipulation that the policy was subject to rescission and would never have existed had the application contained all of the information requested. And because the policy was subject to rescission, the Agency Defendants cannot argue that a provision within the rescinded policy would have precluded coverage. Accordingly, the question of causation is disputed, and the court cannot grant summary judgment to the Agency Defendants on that basis.

### iii.    Contributory Negligence

Finally, the Agency Defendants argue that Ramuji's contributory negligence bars its claim for negligent procurement of insurance because Ramuji failed to read the insurance application. (Doc. 279 at 23–26). The court finds that contributory negligence bars the claim.

Contributory negligence is an affirmative defense to a claim of negligence in procuring insurance. *See Alfa Life Ins. Co.*, 159 So. 3d at 1249. In *Alfa Life Insurance Company*, the insurance agent incorrectly filled out an application for life insurance, causing the premium to be lower than it should have been. *Id.* at 1243, 1245. During a period of conditional coverage—which required the applicant to fulfill certain conditions like making a deposit of the first full premium and completing a medical examination—the applicant died. *Id.* at 1243–45. After his death, the insurance company determined that the applicant had not been eligible

for the premium for which he had applied, meaning that the conditions for conditional coverage had not been met and no coverage was available. *Id.* at 1245.

The applicant's widow sued the insurance agent for negligent procurement of insurance, and the Alabama Supreme Court held that contributory negligence barred the suit as a matter of law. *Alfa Life Ins. Corp.*, 159 So. 3d at 1245, 1249. The Court explained that the application omitted information, and "it is almost never reasonable for an individual to ignore the contents of documents given him or her in association with a transaction." *Id.* at 1252. The Court concluded "as a matter of law . . . any adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction that is the subject of the contract." *Id.* at 1252. In coming to that conclusion, the Alabama Supreme Court quoted favorably from a Virginia Supreme Court decision, which held that "one who signs an application for life insurance without reading the application or having someone read it to him is chargeable with notice of the applicant's contents and is bound thereby." *Id.* at 1253 (quoting *Gen. Ins. of Roanoke, Inc. v. Page*, 464 S.E.2d 343, 344 (Va. 1995)).

The court finds that, under Alabama precedent, contributory negligence bars Ramuji's claim for negligent procurement of insurance. The undisputed evidence is that Mr. Desai signed the insurance application without reading it. (Doc. 294-1

at 5–5; Doc. 270-1 at 83–84; Doc. 270-2 at 110). Ramuji contends that evidence shows that the Agency Defendants did not give him a copy of the application, so he cannot be charged with reading it. (Doc. 299 at 34). But in *Alfa Life Insurance Corporation*, a dissenting justice noted that "there is no evidence indicating that [the applicant] ever saw a hard copy of the application agreement, so he could not have been negligent for failing to read it." 159 So. 3d at 1258 & n.11 (Moore, C.J., dissenting). Nevertheless, the majority found that contributory negligence barred the suit as a matter of law. This court concludes that an Alabama court would find Mr. Desai chargeable with obtaining and reading a copy of the application, even if the Agency Defendants did not offer the application for his review.

Certain exceptions to Alabama's rule of contributory negligence exist. *See Alfa Life Ins. Corp.*, 159 So. 3d at 1252 n.8. If "there have been misrepresentations regarding the contents of a document and there are special circumstances, a special relationship between the parties, or the plaintiff suffers from a disability rendering him or her unable to discern the contents of the document," contributory negligence may not bar the lawsuit. *Id.* Although there is evidence of the Agency Defendants making misrepresentations after the issuance of the policy, Ramuji does not point to any pre-issuance misrepresentations. Even if the Agency Defendants did make misrepresentations about the policy application, Ramuji has not presented evidence of special circumstances, a special relationship between the parties, or any disability

on Mr. Desai's part that would warrant application of the exception. Accordingly, the court **GRANTS** the Agency Defendants' motion for summary judgment in their favor and against Ramuji on Count One.

### b. Count Two (Wantonness)

In Count Two, Ramuji alleges that the Agency Defendants wantonly failed to exercise reasonable care in negotiating and procuring the insurance policy, both in filling out the application and in ensuring that PIB was listed as a mortgagee and additional insured. (Doc. 167 at 15–16).

A wanton failure to procure insurance is actionable under Alabama law. *Thompson v. United Cos. Lending Corp.*, 699 So. 2d 169, 175 (Ala. 1997). "To be guilty of wanton conduct, one must, with reckless indifference to the consequences, consciously and intentionally do some wrongful act or omit some known duty." *Id.* (quotation marks omitted). "Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . . [W]antonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act." *Phillips ex rel. Phillips v. United Servs. Auto. Ass'n*, 988 So. 2d 464, 467–68 (Ala. 2008) (quotation marks omitted). By contrast, "[n]egligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care." *Id.* (quotation marks omitted).

The Agency Defendants argue that Ramuji has not presented evidence that they intentionally did a wrongful act, had a duty to Ramuji, or caused Ramuji's damages. (Doc. 279 at 30–31). As the court has discussed above, the Agency Defendants' arguments about duty and proximate causation fail at the summary judgment stage. *See supra* at 9–13. Moreover, the Agency Defendants' defense of contributory negligence—successful with respect to the negligence claim—"does not act as a bar in an action based on wanton misconduct." *Brown v. Turner*, 497 So. 2d 1119, 1119 (Ala. 1986). The only question remaining for the court is whether a reasonable jury could find that the Agency Defendants' actions rose to the level of wantonness.

Taking the evidence in the light most favorable to Ramuji, a reasonable jury could find that in 2014, the Agency Defendants omitted information (such as Ramuji's outstanding judgments, liens, and the existence of a mortgagee on the property) that Ramuji had disclosed. (Doc. 270-1 at 15; Doc. 270-2 at 97, 103, 112, 116; Doc. 294-1 at 3–4; *see also* Doc. 294-52 at 2; Doc. 294-81 at 55; Doc. 294-82 at 3–4, 11). After the insurer declined to renew that policy because of Ramuji's claims history, Mr. Desai asked the Agency Defendants to procure a new policy. (Doc. 294-1 at 5; Doc. 270-2 at 108). Mr. Pair did not ask Mr. Desai any questions or gather any additional information about Ramuji. (Doc. 294-1 at 5; Doc. 270-2 at 108, 112–13, 119). These actions certainly amount to "inattention, thoughtlessness,

or heedlessness, a lack of due care." *Phillips*, 988 So. 2d at 467–68. But a reasonable jury could not find that it shows the level of consciousness or intentionality required for a claim of wantonness.[7] Accordingly, the court **GRANTS** the Agency Defendants' motion for summary judgment in their favor and against Ramuji on Count Two.

### c. Count Three (Breach of Contract)

In Count Three, Ramuji alleges that the Agency Defendants breached their contract to procure insurance for Ramuji. (Doc. 167 at 16–17). Specifically, Ramuji contends that the Agency Defendants breached their contract by failing to procure a policy that would provide coverage for the April 2016 fire and that would cover PIB as an additional insured. (*Id.* at 17 ¶ 52).

"In Alabama, when an insurance broker fails in the duties he assumes, one can sue him . . . for breach of contract." *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1067 (11th Cir. 1990); *see also Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1065 (Ala. 1978). To prevail on a breach of contract claim, the plaintiff must establish (1) the existence of a valid contract; (2) the plaintiff's own performance under the contract; (3) the

---

[7] The court does not consider the Agency Defendants' post-issuance misrepresentations about whether the policy covered PIB because those misrepresentations do not relate to the *procurement* of the policy.

defendant's nonperformance; and (4) damages. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

The Agency Defendants argue only that (1) they performed under the contract by obtaining insurance; and (2) Ramuji's own actions proximately caused its failure to recover under the policy. (*See* Doc. 279 at 28–30). The Agency Defendants' first argument fails on its face: procuring a policy that is void because it is subject to rescission from its issuance is not performance of a duty to procure an insurance policy.

Turning to the second argument, the Agency Defendants assert that "Ramuji is . . . ultimately responsible for any error in the application that led to the denial of its claims under the policy" because a person who signs a contract is bound by that contract, even if he did not read it. (Doc. 279 at 29). This argument rests on Alabama's merger doctrine. (*See* Doc. 304 at 17–19). The merger doctrine provides that if an insured accepts a policy, "he is bound thereby even though the policy does not correspond to the preliminary negotiations." *Sexton v. Liberty Nat. Life Ins. Co.*, 405 So. 2d 18, 22 (Ala. 1981). The merger doctrine arises in cases where the pre-contract negotiations differ from the terms of the final written contract. *See Farmers & Merchants Bank*, 514 So. 2d at 831–32. The issue in this case is not that the insurance policy differed from any pre-contract negotiations, but that the Agency Defendants' omission of material information from the insurance application caused

the insurer to issue a policy that was subject to rescission. The merger doctrine does not bar this breach of contract claim.

The Agency Defendants' final causation argument is that their failure to ensure that PIB was named as an insured caused Ramuji no damages, as the insurance policy's mortgage clause shifts the debt from the mortgagee to the insurer. (Doc. 279 at 29). In other words, Ramuji would have still owed the entire amount of the mortgage; only the holder of the note would change. (*Id.*). The court agrees with the Agency Defendants that the failure to name PIB as an insured did not affect Ramuji's damages, but disagrees that this fact warrants summary judgment in their favor. Given the parties' stipulation that the policy was subject to rescission, naming PIB as an additional insured would have made no difference to Ramuji's damages. Regardless of whether PIB was named in the policy, the Underwriters would not have paid Ramuji under a rescinded policy. Accordingly, a reasonable jury could find that the Agency Defendants' procurement of a policy subject to rescission caused Ramuji's damages. The court **DENIES** the Agency Defendants' motion for summary judgment on this claim.

### d. Count Four (Fraud)

In Count Four, Ramuji alleges that the Agency Defendants engaged in fraud by misrepresenting that Ramuji did not have any judgments and by omitting the

existence of judgments from the insurance application.[8]  (Doc. 167 at 18–19).  The factual basis for this claim is not entirely clear, but the claim appears to be one for fraudulent suppression.  (*See id.*; Doc. 299 at 42–44).

The elements of a fraudulent suppression claim are "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury."  *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010).  Under Alabama law, "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."  *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997).

The Agency Defendants contend that Ramuji's duty to read the insurance application forecloses any claim of fraud based on the misrepresentations in or

---

[8] In briefing on these cross-motions for summary judgment, Ramuji asserts in part that this claim relates to the Agency Defendants' failure to have PIB named as an additional insured in the policy.  (*See* Doc. 269 at 11–12; Doc. 299 at 42–44).  Ramuji's second amended third party complaint does not assert a claim of fraud relating to PIB being named as an additional insured.  (*See* Doc. 167 at 18–19).  The claim expressly relates to the Agency Defendants' misrepresentations or omissions in: (1) describing the language in the insurance application; (2) describing the material terms of the insurance application; and (3) representing that they "would use their existing knowledge of Ramuji's history, situation, and insurance needs to procure appropriate coverage."  (*Id.* at 18 ¶ 56).  "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  The court will not consider any fraud claim that Ramuji did not properly assert in its second amended third party complaint, including the claim that the Agency Defendants fraudulently suppressed their failure to have PIB added as a named insured.

omissions from that application. (Doc. 279 at 31–34; Doc. 304 at 11). The court agrees. Alabama law is clear that a party cannot reasonably rely on a misrepresentation that is contravened by available documents. *See Foremost Ins. Co.*, 693 So. 2d at 421; *see also Alfa Life Ins. Corp.*, 159 So. 3d at 1250–52 (stating that, in either negligence or fraud cases, the Court had "recognized a plaintiff's general duty to read the documents received in connection with a particular transaction, along with a duty to inquire and investigate"). Although Mr. Desai has presented evidence that the Agency Defendants did not give him a copy of the insurance application, he has not presented any evidence that he asked for a copy to review and ensure its accuracy.[9] Accordingly, Ramuji did not fulfill its duty to inquire and investigate. Had Mr. Desai reviewed the insurance application, he would have seen that it did not disclose the judgments, liens, or existence of a mortgagee. Accordingly, Ramuji's reliance on any of the Agency Defendants' misrepresentations about the content of the insurance application was unreasonable as a matter of law. The court **GRANTS** the Agency Defendants' motion for summary judgment in their favor and against Ramuji on Count Four.

---

[9] Ramuji's reliance on the Evidence of Insurability form is inapposite. (*See* Doc. 299 at 42–43). That form purported to show that PIB was covered under the policy, but at the court has stated before, PIB's status as an insured is irrelevant given the parties' stipulation that the policy was subject to rescission.

2.  Ramuji's Motion for Partial Summary Judgment Against RJA and Mr. Pair

Having resolved the Agency Defendants' motion for summary judgment, the court must now turn to Ramuji's motion for partial summary judgment.  Because the court has granted the Agency Defendants' motion for summary judgment on Counts One, Two, and Four, the court **DENIES** Ramuji's motion for summary judgment on those counts.  That leaves only Ramuji's motion for summary judgment as to liability on Count Three.

*a.  Count Three (Breach of Contract)*

Ramuji seeks summary judgment on its claim that the Agency Defendants failed to procure insurance that listed PIB as an additional insured.  (Doc. 269 at 8; *see also* Doc. 167 at 17 ¶ 52).  Putting aside questions about the enforceability of a mortgage clause in an insurance policy that is subject to rescission, genuine disputes of material fact exist about whether Mr. Desai disclosed the existence of PIB as a mortgagee to the Agency Defendants.  Mr. Pair testified that he was unaware that PIB was Ramuji's mortgagee and that Mr. Desai never asked him to have PIB added to the policy.  (Doc. 294-1 at 50; Doc. 294-81 at 102, 126).  Accordingly, the court **DENIES** Ramuji's motion for summary judgment on Count Three.

III.   **CONCLUSION**

The court **GRANTS IN PART** and **DENIES IN PART** the Agency Defendants' motion for summary judgment.  (Doc. 279).  The court **GRANTS** the

motion and **WILL ENTER SUMMARY JUDGMENT** in favor of the Agency Defendants and against Ramuji on Counts One, Two, and Four. The court **DENIES** the motion as to Count Three, which will proceed to trial.

The court **DENIES** Ramuji's motion for summary judgment. (Doc. 269).

The court will enter a separate partial judgment in accordance with this memorandum opinion and order.

**DONE** and **ORDERED** this January 28, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE